NATHANIEL DYER *vs.* DAVID T. LIBBY.

*Delivery. Statute of Frauds.*

If it be agreed that goods sold shall be hauled by the vendor to a place specified, it does not necessarily follow that the title thereto does not pass till they reach the place designated. The property may pass so as to take the case out of the Statute of Frauds, at the time the agreement is made, if the parties so intend; and whether or not such was their intention, in any given case, is a question for the jury, to be determined from the words, acts, and conduct of the parties, and all the circumstances.

An instruction of the above purport held unexceptionable.

MOTION FOR NEW TRIAL AND EXCEPTIONS.

ASSUMPSIT on an account for hay; plea, the general issue. The plaintiff testified that he met Mr. Libby on board of the cars and agreed to sell him this hay; that the plaintiff was to haul the hay to Freeport depot and get twenty-five dollars a ton for it; "he (Libby) was to press the hay, and furnish press, and pay me twenty-five dollars a ton, and I was to haul it to Freeport. I was to furnish withes and binders." This was on the 16th of February, 1865; on the 22d the parties met in the road and rehearsed the bargain, "so that there would be no misunderstanding." On the 27th of the same month Libby sent the men who pressed the hay and baled it. The plaintiff was to haul the hay on sledding. A few days after it was pressed he told Libby that he should like to haul it immediately, but Libby replied, "I cannot get cars now, but will go to the corner (Freeport) and get a place." He went and came back and said he could get no place. The 18th of March he told Dyer he might haul the hay, but it had rained so as to make it impracticable to haul it. The plaintiff was unable to haul it, or to procure any neighbor to do it. This was Saturday; the following Monday, 20th, the parties met at town-meeting, and plaintiff asked defendant how he got along. The reply was, "I did not see you there, but I hauled my hay [purchased elsewhere] and loaded my

cars. It was all right." The plaintiff saw Libby several times after that, and L. said, " Hay will be higher, and we can get that to the depot most any time." It was not, in fact, hauled till June 19, 1865, and was then stored at a place near the depot by the plaintiff, who notified defendant. Plaintiff then called on defendant for his pay, and defendant answered : " If I were to take all the hay I have bought it would ruin me."

The hay was branded " D. T. Libby, Pownal, Maine." The defendant testified that the hay was never delivered to him, and that he never accepted it; that, at the time he asked to have it hauled in March, other hay was hauled to him upon neighboring roads ; that he did not tell the men to mark the hay with his name, and that they used his stencil upon any hay pressed by them at their pleasure, whether it belonged to him or not. There was a rising market till the middle of April; after that, hay declined. The jury returned a verdict for plaintiff, which defendant moves to set aside as against law and evidence ; and excepts, also, to the directions given the jury by the court. The only instruction excepted to is fully stated in the opinion.

*Nathan Webb* and *James D. Fessenden*, for defendant.

1. The case is within the Statute of Frauds. The contract was to deliver the hay at Freeport depot for twenty-five dollars per ton and half the expense of pressing. Dyer never performed his part of the contract, and Libby never waived performance. Defendant never saw the hay till after it was pressed. His pressmen did not know he had bargained for the hay or thought of doing so ; but branded it in their usual course of defendant's business of pressing hay ; putting the presser's brand on in all cases, whether he bought the hay or not.

2. The intention of the parties is insufficient to constitute such a delivery as will take a case out of the statute, unless accompanied by acts suited to effect that purpose. The acts referred to in the instruction were not sufficient ; nor of the character to place the property unequivocally within the exclusive control and dominion of Mr. Libby. To constitute such a delivery and acceptance

as will take a case out of the Statute, the possession must have been parted with by the owner so as to deprive him of his lien and leave nothing further to be done by him. *Shindler* v. *Houston*, 1 Comst. 261; *Bell* v. *Bament*, 9 M. & W. 41; *Phillips* v. *Hunnewell*, 4 Maine, 376; *Baldy* v. *Parker*, 2 Barn. & Cres. 37; *Tempest* v. *Fitzgerald*, 3 B. & Ald. 680; *Denny* v. *Williams*, 5 Allen, 1.

*Vinton & Dennett*, for plaintiff, cited Story on Sales, §§ 276 278; *Chapin* v. *Rogers*, 1 East. 192; *Bailey* v. *Ogden*, 3 Johns. 399; *Elmore* v. *Stone*, 1 Taunt. 458; *Vincent* v. *Germond*, 11 Johns. 83; *Davis* v. *Moore*, 13 Maine, 424; *Rice* v. *Austin*, 17 Mass. 197; *Sawyer* v. *Nichols*, 40 Maine, 212; *Pratt* v. *Chase*, 40 Maine, 269.

WALTON, J. The defendant moves to have the verdict set aside, as against evidence. He contends that the evidence is insufficient to warrant the jury in finding that the hay sued for was delivered. As the action is in form for goods sold and delivered, it was essential for the plaintiff to prove an actual delivery to, and acceptance by, the defendant, or the action could not be maintained. It appears that the hay was taken from the plaintiff's mow by men employed and paid by the defendant. It was pressed, put into bands, weighed, and branded with the defendant's name. These acts were sufficient to constitute a delivery, if accompanied by the requisite intention of both parties that the property should then pass.

Was the evidence sufficient to warrant the jury in finding that it was the intention of the parties that the property should then pass? Weighing, and marking with the purchaser's name, have always been regarded as very significant facts bearing upon the question of delivery. In this case the pressing and weighing and branding was paid for by the defendant, and there does not appear to have been any arrangement by which this expense could, in any event, be charged to the plaintiff. Why should the defendant incur this expense, with no provision for reimbursement, if he did not understand that the hay was his? Why should the plaintiff

permit the hay to be branded with the purchaser's name, if he did
not understand that the property had passed?   All the terms and
conditions of sale had been previously agreed upon.   Can the
proposition be maintained that the evidence was insufficient to au-
thorize the jury to find a delivery?   That a verdict finding such a
delivery, is so clearly against evidence that it cannot be permitted
to stand?   We think not.   They probably found that the capture
of Richmond and the surrender of Lee caused a sudden decline in
the price of hay, and that this was the true reason why the de-
fendant sought to escape from the consequences of the bargain he
had made, and not the want of a delivery.

The fact that it was one of the conditions of the sale, that the
plaintiff should haul the hay to the depot, is not inconsistent with
the proposition that it might have been delivered, so as to become
the property of the defendant, at the barn.   And whether the
plaintiff had fully performed his part of the contract, or if not,
whether he was prevented from so doing through the fault of the
defendant, were facts to be determined by the jury, under proper
instructions from the court as to the requirements of the law; and,
as nothing appears to the contrary, it is to be presumed that proper
instructions were given upon these points.

The presiding judge instructed the jury, that if the defendant,
by himself or servant, with the knowledge and consent of the
plaintiff, took the hay sued for from the plaintiff's mow, and pressed
it, and branded it with his own name, and the plaintiff understood
and intended that these acts should divest him of all ownership in
the hay, and that the title should be thereby absolutely and uncon-
ditionally vested in the defendant; and the defendant so under-
stood it, and intended, by these acts, to become owner of the hay,
and to have the title thereby absolutely and unconditionally vested
in him, then no other or further delivery was necessary to take the
contract of sale out of the operation of the statute for the preven-
tion of frauds and perjuries, and enable the plaintiff to maintain
an action for goods sold and delivered; and that whether such was
the understanding and intention of the parties was a question of

Dyer *v.* Libby.

fact, to be determined by the jury in view of all the evidence in the case bearing upon the question.

We think these instructions were appropriate and correct.

*Motion and exceptions overruled.*

*Verdict on the Judgment.*

APPLETON, C. J.; DICKERSON, BARROWS, and DANFORTH, JJ., concurred. KENT and TAPLEY, JJ., dissented.

Kent, J., gave this opinion.

KENT, J., dissenting. Assuming the law of the judge (and I do not dissent from it), I am hard pressed by the objection that there was no sufficient proof of delivery, to take the case out of the statute. It is plain, from the plaintiff's own testimony, that the bargain was for a sale of the hay, and the price was twenty-five dollars a ton delivered by Dyer at Freeport depot.

But before it was to be hauled it was to be screwed, and the agreement was that the plaintiff was to do a part of this and the defendant a part. Libby was to have it screwed, to furnish a press, and Dyer was to furnish withes and binders.

All this was done; but is there in this sufficient evidence of a delivery of the property? Must there not be such a delivery a vests property fully and beyond all liens?

The marking of the bundles, without orders, by Libby's men, is, at best, a very equivocal act; and would have been, even if it had been done by defendant himself.

A sale is incomplete when anything remains to be done by either party. Here, clearly, the hay, as part of the contract, was to be hauled to Freeport, and the plaintiff had a right to retain it until the price was paid. Is there anything from which a fair inference can be drawn that he intended to divest himself of all ownership in the hay? all lien upon it for his pay, and to transfer the absolute title?

Still less is there evidence of what the ruling required as to defendant. Did he, thereby, understand and assent and intend that

the absolute title should at once vest in him, and he be at once liable to pay twenty-five dollars a ton at the barn, and before any hauling, and be left to pursue his remedy at law against Dyer for not hauling the hay, as an independent and distinct agreement.

Could it have been held, on attachment, as defendant's while in the barn? If burned up there before hauling, would it have been defendant's loss?

If the agreement had been, only, that Libby was to give, say, twenty dollars a ton for the hay in the barn and on the mow, and was to screw it there at his own expense, or take it away without screwing, as he thought best, and if he afterwards came by himself or servants and took the hay away, or screwed it there, I should have no doubt that it would have been a sufficient delivery or taking possession. But that was not this bargain. The hay was to be delivered at another place, as part of the bargain. I grant that it might probably have been delivered at the time of bargain, so as to bind the bargain. But how can it be said, that where there is a contract for a sale of hay, which, by its terms, is not, and cannot be performed until it is hauled to another place, and the buyer is to do something in conjunction with the seller to prepare it for transportation, and does that thing, leaving it for the seller to haul it to the place of delivery agreed upon, that this is such a delivery as takes the case out of the statute.