WHEELOCK *v.* STARKWEATHER.

1. SALES—CONTRACT—TRANSFER OF TITLE—EVIDENCE — QUESTION
FOR JURY.
> In assumpsit for the price of certain hay, evidence examined,
> and *held*, that whether the title to the hay passed at the time
> of making the contract of sale should have been submitted to
> the jury.

2. SAME—TRANSFER OF TITLE—CONTROL BY SELLER—EFFECT.
> On the issue whether the title to certain hay passed to the
> buyer at the time of making the contract of sale, the stipu-
> lation that the seller should draw it to the cars after baling
> does not of itself render the contract executory.

Error to Wayne; Brooke, J. Submitted June 12,
1906. (Docket No. 77.) Decided October 1, 1906.

Assumpsit by Charles P. Wheelock and another against
Edward M. Starkweather and another for goods sold and
delivered. There was judgment for plaintiffs, and de-
fendants bring error. Reversed.

*C. C. Yerkes,* for appellants.

*P. W. Voorhies,* for appellees.

OSTRANDER, J. Assumpsit for the purchase price of
certain hay alleged to have been sold and delivered by
plaintiffs to defendants. There was a verdict for plain-
tiffs under an instruction:

" The title to this hay passed on the day that it was
purchased as it stood in the stack; that from that mo-
ment these stacks of hay belonged to Starkweather &
Daniels, and it stood there at their risk, subject, however,
to such duties in connection therewith as were cast
upon the plaintiffs, either by their agreement with refer-
ence to its delivery, or by the duty imposed upon Bridger
to properly do what he undertook voluntarily to do with
reference to its care after it was baled and before it was
delivered."

It is the contention of defendants, the plaintiffs in error, that if the testimony supported any conclusion as to when the title passed it supported the converse of the conclusion stated by the court; that the question was properly one of fact for the jury. A careful reading of the testimony warrants the statement that there is no substantial dispute between the parties concerning the bargain which was made. Defendants are buyers of hay which they press and ship to market. Plaintiffs are farmers. Defendant Daniels testified:

" I went to buy this hay and offered them $7 a ton for it. They accepted it, and I gave them a check on the hay. We were to send a man to press it and it was to be delivered at Plymouth as soon as cars could be obtained. * * * When I bought the stacked hay, I ran my hand into the stacks and made an inspection of it."

The thing bought and sold was distinguished, the price to be paid was agreed upon. The vendee was to bale the hay and weigh it. The vendor was to draw it to Plymouth to cars to be furnished by the vendee. The agreement then made proceeded no further. The time and manner of payment of the balance of the purchase price were not discussed. It was not agreed that title should pass. Thereafter the vendees, aided by the vendors, pressed the hay into bales, weighed it, made memorandum of the weights, and placed on each bale a tag showing its weight. The vendors then piled the hay in the field upon a foundation made by them, and, to some extent, covered the top and sides to protect it from the rain. The hay so remained for about two weeks. During this time the vendors requested that they might draw the hay to Salem, instead of to Plymouth. According to their testimony it was then agreed that, if vendees could get cars at Salem, the hay might be drawn there. According to defendants the vendors were told that it might be difficult to get cars at Salem, and, if in waiting for them the hay was damaged, it would be at the expense of the vendors.

"I told him it was at his risk; that it mustn't get wet while in the fields; that we could not take wet hay."

During the two weeks that the hay was piled in the field it rained some. Learning there were cars at Plymouth ordered there by the vendees, the vendors, without notice to the vendees, drew the hay to Plymouth and there put it in a car pointed out by the station agent as one designed for vendees. When the hay was uncovered for the purpose of drawing it, it was found to be wet in places. In drawing it no canvas or other covering was used for the hay, and some of it was wet while on the way to the station. Others were loading hay for the defendants at Plymouth and the hay in question went forward without further inspection by the vendees, being billed out by the railroad agent under instructions from defendants to a commission house in New York City, and, it is asserted, was spoiled, and by its contact in the car with other sound hay damaged it. Defendants had no knowledge that the plaintiffs' hay had been loaded until Monday succeeding the week of loading.

What was said when plaintiffs applied for pay is in dispute. Defendants claim they said they understood the hay had got wet; that they would make a small advance upon it and give strict account of its sale; that plaintiffs agreed to take the sales account and the returns received for their hay. The responsibility of the vendors as upon an arrangement, if one was made, to care properly for the hay after it was pressed and to properly deliver it, was left to the jury under instructions not here complained about. In such submission the court proceeded according to the finding of title hereinbefore set out. The sole question is, therefore, whether it can be said as matter of law that title to the hay passed before or at the time the hay was baled. As was said by this court in *Wilkinson* v. *Holiday*, 33 Mich. 386:

"If one bargains with another for the purchase of property, and that is done in respect to it which the parties agree shall pass the title, nothing more is generally req-

uisite. The question is only one of mutual assent— whether the minds of the parties have met, and by their understanding the purchaser has now become owner. This is the general rule where the case is not within the statute of frauds."

It is clear that, if the contract was in other respects complete and the intention of the parties otherwise plain, the stipulation that the vendors should draw the baled hay to the cars would not of itself render the contract of sale executory. *Terry* v. *Wheeler*, 25 N. Y. 520; *Dyer* v. *Libby*, 61 Me. 45; *People, for use of Holmes*, v. *Sheehan*, 118 Mich. 539; *Whitcomb* v. *Whitney*, 24 Mich. 486, 491; Benjamin on Sales (7th Am. Ed.), § 319, and notes. Such a stipulation is, however, to be taken here with all the other facts and circumstances attending the transaction in determining the intention of the parties. It is true that the plaintiffs delivered the hay without arrangement as to payment of the balance of the purchase price. But defendants say this action was perhaps undertaken for the purpose of selling spoiled hay, and that it does not aid in determining the right of plaintiffs, under the contract actually made, to withhold the hay until payment for it was made. In the case at bar the identification and setting apart of the hay, the pressing done at the expense of the vendees, support inferences of an understanding that the hay belonged, at least after baling, to the purchasers. So the testimony of defendant that in reply to the request that the hay might be delivered at Salem instead of at Plymouth he told plaintiff that such course would be attended by delay and that it "was at his risk," and the fact that it was defendants, and not plaintiffs, who by providing cars could fix the time for loading the hay, may be said to support the inference that the title to the hay had passed.

On the other hand, it is claimed that defendants purchased hay in many places and that the delay in baling and in actual delivery is, by inference, not at their risk. And in *Wilkinson* v. *Holiday*, supra, it is said:

" Moreover, no credit appears to have been agreed upon, and the legal inference is, where that is the case, that payment was to be made before the purchaser was to be at liberty to remove the property."

See, also, *Foster* v. *Mining Co.*, 68 Mich. 197. It was for the jury, and not the court, to draw the necessary inferences and to determine the principal fact.

The judgment is reversed, and a new trial granted.

BLAIR, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.