STATE OF MINNESOTA *vs*. HENRY LOOMIS.

April 29, 1881.

**Demurrer to Indictment—Review of Order Overruling.**—An order overruling a demurrer to an indictment cannot be brought before this court for review under Gen. St. 1878, *c*. 117, § 11, after a trial and verdict upon an issue of not guilty.

**Motion in Arrest of Judgment.**—Upon a motion in arrest of judgment after verdict, in a criminal case, the only questions that can properly be raised are such as relate to the sufficiency of the indictment upon the facts stated, and the jurisdiction of the court.

**Indictment—Larceny of Warehouse Receipts—Authority to Issue.**—In an indictment for the larceny of warehouse receipts alleged to have been issued by a railroad company named in the indictment, a want of any allegations showing that the company had legal authority, under its charter, to issue the same, is not a fatal defect. It is enough, in this regard, if the facts stated show a liability against the company in respect to the receipts in favor of any lawful holder of the same, which it would be estopped from denying by setting up a want of authority.

**Same—Pleading Private Statute.**—The statutory rule in respect to pleading a private statute, in an indictment, (Gen. St. 1878, *c*. 108, § 13,) by a reference to its title, and the day of its passage, has no application to a case where, at common law, such statute need not have been pleaded.

**Warehouse Receipts—Sale and Delivery without Indorsement.**—The title to warehouse receipts, which the statute makes negotiable, transferable by indorsement, may also be passed by a sale and delivery of the same without indorsement.

The defendant was indicted for, and convicted of the crime of larceny, in the district court for Nicollet county. A motion in arrest of judgment having been denied by *Dickinson*, J., (acting for the judge of the 9th district,) before whom the defendant was tried, the case was certified to this court under Gen. St. 1878, *c*. 117, § 11.

Upon being arraigned, the defendant demurred to the indictment, but the demurrer was overruled, and he pleaded not guilty, and after a trial was convicted of the larceny of nine elevator tickets or receipts, of the value of $515.

The indictment contained the following allegations: "That heretofore, * * * the Saint Paul & Sioux City Railroad Company were, and now are, a corporation in the state of Minnesota, duly established and organized under and by virtue of the laws thereof, and that during all said time, the said Saint Paul & Sioux City Railroad Company did own and operate a grain elevator, * * * said grain elevator being * * * used for the reception and storage of wheat and other grains, for shipment; and the said Saint Paul & Sioux City Railroad Company, * * * did operate said elevator and do business therein under the name of the Saint Paul & Sioux City Elevator Company." Continuing, the indictment sets out the issuance by the railroad company, through its authorized agent, one C. F. Johnson, and delivery to one W. Waterman, of nine "certain accountable receipts for personal property, to wit, wheat; said receipts being elevator tickets, so called" and of the following form:

| | |
|---|---|
| The wheat named herein is insured by the company, and is subject to charges for insurance and for storage, at the published rates, until surrendered for shipment. | SAINT PAUL & SIOUX CITY ELEVATOR COMPANY.<br><br>Saint Peter, 5 mo., 14 day, 1877.<br><br>Received of W. Waterman Load No. 2, Ticket No. 19,405, account of W. W., or bearer.<br><br>No. 2 Wheat, Bin No. 3.<br><br>......lbs.......41 20-60th Bushels.<br><br>C. F. Johnson, Inspector. |

—Each of these receipts being issued and delivered to Waterman, upon his delivery to the railroad company of the wheat mentioned therein. The indictment then alleges that "the said Saint Paul & Sioux City Railroad Company, upon the delivery to said company of the said tickets, as aforesaid, and

upon the surrender of the same by the holder thereof, as aforesaid, became and were responsible to such holder for the amount and quantity of the wheat so mentioned in said receipt or receipts; and the receipts aforesaid were good and valid orders on and against the said company, * * * * and that the Saint Paul & Sioux City Railroad Company were at said time responsible to the holder or holders of said tickets for the amount and quantity of wheat so called for in each of said tickets." The indictment, after setting out the transfer and delivery of the receipts by Waterman to Prael & Dubinsson, and the value of the receipts, charges the defendant with the larceny of the same from said Prael & Dubinsson and concludes in the usual form.

*M. G. Hanscome* and *Sumner Ladd,* for defendant.

An indictment must contain all the essentials to constitute the offence and cannot be aided by intendments. U. S. Crim. Dig. p. 340, §§ 79, 80; p. 342, § 114; p. 349, §§ 212, 220; p. 346, § 183; p. 360, § 363; p. 369, § 479; *State* v. *McIntyre,* 19 Minn. 93; *State* v. *Philbrick,* 31 Me. 401; 1 Bish. Cr. Law, § 813 and note 1. To render bonds, notes, etc., the subject of larceny they must be at the time legally valid and subsisting securities. *State* v. *Wheeler,* 19 Minn. 98; 2 Russ. on Crimes, 74; *Wilson* v. *State,* 1 Port. (Ala.) 118; *Culp* v. *State,* 1 Port. (Ala.) 33; *People* v. *Shall,* 9 Cow. 778. The wheat tickets import no validity on their face. *State* v. *Wheeler,* 19 Minn. 98. No authority in the railroad company to issue these tickets is shown, and no information is given as to any of its powers or purposes. The powers of the railroad company are not matters of presumption. *Minneapolis Harvester Works* v. *Libby,* 24 Minn. 327.

Being incorporated under a private statute, this statute should have been pleaded. *Horn* v. *Chicago & N. W. Ry. Co.,* 38 Wis. 463; 1 Chitty Pl. 216; Gen. St. 1878, c. 66, § 110; *Hewett* v. *Town of Grand Chute,* 7 Wis. 282; 1 Bl. Com. 86; Smith on Stat. Const. §§ 795, 827, 828, 831; *Ohio & Ind. R. Co.* v. *Ridge,* 5 Blackf. 78.

The ownership of goods must be proved as laid. These wheat tickets could only be transferred by *endorsement* and *delivery*.    Gen. St. 1878, *c.* 124, § 17.

*Chas. M. Start*, Attorney General, for the State.

CORNELL, J.    The case is before us upon a certified report of the district judge of the sixth judicial district, under Gen. St. 1878, *c.* 117, § 11, for the purpose of obtaining a review of certain rulings of the district court, in overruling a demurrer to the indictment, and also in denying a motion in arrest of judgment after verdict. It is objected by the attorney general that the order overruling the demurrer is not now properly before us for review, because an issue, under a plea of not guilty, has since been made and tried, and it is now too late to question the correctness of that order in this court, except it be brought before us in the ordinary way, by appeal or writ of error.

In our opinion the point is well taken.    The statute under which those proceedings are had, provides that "if, upon the trial of any person who shall be convicted in any district court,    *    *    *    or if, upon any demurrer to an indictment, ·or to a special plea or pleas to an indictment, or upon any motion upon or relating to an indictment, any question of law shall arise, which, in the opinion of the judge of such court, shall be so important or so doubtful as to require the decision of the supreme court, he shall, if the defendant desire it or consent thereto, report the case, so far as may be necessary to present the question or questions of law arising therein, and certify the said report to the supreme court of the state; and thereupon all proceedings in said cause shall be stayed until the decision of said supreme court shall be made." According to a familiar rule of construction, the first clause of this section can have no application to any of the cases therein afterwards particularly mentioned, for if the latter were included by that clause, their subsequent specific enumeration was wholly unnecessary.

In providing this new and additional mode of obtaining a

review of any question decided upon a demurrer to an indictment, which the trial court may deem of doubtful and important character, the statute expressly authorizes a stay of all subsequent proceedings until the adjudication of the question in the appellate court. The obvious purpose of the statute was to enable the trial court, with the consent of the defendant, before the trial of any issue upon the indictment under a plea of not guilty, to procure, for its guidance in the subsequent proceedings in the action, an authoritative decision of any doubtful and important question raised by the demurrer, thereby saving, perhaps, much of the labor and expense that might otherwise arise in the final disposition of the case upon the merits. Whenever, therefore, any such question, decided upon a demurrer, is sought to be certified up to the supreme court, it must be done before any issue of fact is presented and tried; otherwise the correctness of the ruling of the trial court in determining the issue upon the demurrer can only be reviewed in the ordinary way, on appeal or by writ of error. Of the questions which are certified to us in this case, cognizance can therefore only be taken of the one which relates to the sufficiency of the indictment upon the facts therein stated, as that is the only one that was properly before the trial court for adjudication on the motion in arrest of judgment, no question of jurisdiction being made in the case. Gen. St. 1878, c. 111, § 11.

The indictment is for the larceny of certain so-called elevator tickets or warehouse receipts, which are copied and described *in hæc verba,* and are alleged to have been issued and delivered by the St. Paul & Sioux City Railroad Company to one W. Waterman, for certain named quantities of wheat, stated to have been received from him, for storage and shipment, at its elevator at Kasota. The sufficiency of the indictment is assailed, mainly, on the ground that the receipts themselves, although alleged to be worth respectively the specific sum therein stated, are nevertheless not shown, by any proper averments of fact, to be of any value, or to con-

stitute any binding obligation upon the railroad company, or to create any liability against it in favor of any one. In support of this position it is urged—*First*, that the general allegation that said company was, during the time covered by the transactions referred to, and is, "a corporation in the state of Minnesota, duly established and organized under and by virtue of the laws thereof," is fatally defective in not stating whether such incorporation was under the general laws of the state authorizing the formation of railroad companies and defining their powers, or some private statute; for, if under the latter, the court cannot take judicial notice of its provisions and the powers they confer, without being properly pleaded by a reference to its title and the day of its passage, in accordance with the statutory rule in pleading a private statute or any right derived therefrom, (Gen. St. 1878, c. 108, § 13;) and hence it cannot be determined, upon the face of the indictment, whether the said company had any authority to issue the tickets, or do the several acts and things alleged to have been done by it in connection therewith; and, *second*, that there are no allegations of fact showing that the said company owned, controlled or operated any line of railroad, or that it had any corporate powers or authority to hold and operate an elevator, or to do any of the acts it is alleged to have done in connection therewith, or with the issue of said warehouse receipts, and hence, for aught that appears, the same are illegal and void.

Assuming that the railroad company was in fact incorporated under a private statute, it was sufficient to aver its corporate existence in the manner here done, without pleading the statute. Under the common-law rule, its act of incorporation need not have been pleaded in this case, because the offence charged is not for violation of any of its provisions; nor is it predicated upon it. As the statutory rule (Gen. St. 1878, c. 108, § 13) in respect to pleading a private statute in an indictment, by a reference to its title and the day of its passage, was only intended for those cases where,

at common law, it was necessary to plead such statute, it follows that the rule referred to has no application to the case at bar. *Dodge* v. *Minn. Plastic Slate Roofing Co.*, 14 Minn. 49; *State* v. *Vt. Central R. Co.*, 28 Vt. 583; *Phelps* v. *People*, 72 N. Y. 334; Field on Corporations, § 384. The only pertinency of any allegation as to the corporate existence of the company, in this case, was to identify the party by whom the receipts were issued, the more particularly to describe the property alleged to have been stolen, and to show its value. The fact of incorporation was not an essential ingredient of the offence charged. If the receipts represented a legal liability against the company, so that they were valuable as property, and capable of becoming subjects of larceny under the statute, it is wholly immaterial how or where the company was incorporated, or whether in fact it had any legal existence as a corporation.

In respect to the second point, the want of any allegations showing that the railroad company, in fact, owned or operated a railroad in connection with its elevator, or that it had any power or authority under its charter to own and operate the elevator in question, or to do any of the other acts alleged to have been done by it, is not a fatal defect. Conceding the requisite power and authority of the company to receive wheat in storage for shipment, and to issue therefor warehouse receipts of the kind and character mentioned and described in the indictment, it is plain, upon the facts stated, that it incurred in the issuance of the receipts in question, a liability in respect to each of them, to any one who might become its lawful owner and holder, for a like quantity and quality of wheat represented by it, or its value. Gen. St. 1878, c. 124, §§ 7 to 16, inclusive. This liability it cannot escape or evade by pleading want of corporate power to make and execute the receipts. Having assumed the legal right to exercise the requisite authority, and reaped the benefits of the transaction done upon the faith of its existence, it would be estopped from setting up a want of authority as a defence in

any action brought upon the receipts, by any lawful owner and holder thereof. If the company can interpose no such defence against its liability upon the receipts, certainly a party who has feloniously obtained possession of them cannot be heard to assert it, in answer to an indictment for the theft.

The allegations in regard to the sale, transfer and delivery of the receipts to Prael & Dubinsson are sufficient upon the question of the ownership of the property, though the statute (Gen. St. 1878, c. 124, § 17) makes instruments of this character negotiable and transferable by endorsement and delivery. The title may be passed by a sale, transfer and delivery upon a valuable consideration, though not in the form of an endorsement. *Pease* v. *Rush*, 2 Minn. 89, (107.)

The district court was right in overruling the motion in arrest of judgment.