Sargent v. Central Warehouse Company.

## Samuel C. Sargent
### v.
## Central Warehouse Company.

1. Warehouse receipt—Right of action by indorsee.—Where certain flour was delivered by A to a warehouse company for storage, and A subsequently sold the same to B, and indorsed and delivered the warehouse receipt to B, and also the inspection certificate showing it to have been in good condition when inspected at the freight depot, and there was evidence tending to show that it was in like good condition when received by the warehouse company, and B, inspecting it six months later, found it in bad condition, and brought suit in his own name against the warehouse company. *Held*, that the indorsement and delivery of the warehouse receipt had the effect not only to transfer the title to the flour to B, but also to give him a right of action for any breach of duty of which the warehouse company was guilty in respect thereto *at any time* during the bailment.

2. Practice—Withdrawing case from jury.—Where a legal cause of action was stated in the second count of plaintiff 's amended declaration, and an issue was joined thereon, which a jury had been impaneled to try, and the plaintiff put in evidence which tended to prove the cause of action as alleged. *Held*, that the court erred in excluding the same and withdrawing the case from the jury, against plaintiff's objection, and in rendering final judgment for the defendant.

Appeal from the Circuit Cook of Cook county; the Hon. Kirk Hawes, Judge, presiding. Opinion filed January 6, 1885.

This was an action on the case brought by Samuel C. Sargent against the Central Warehouse Company to recover damages to a car load of flour delivered to the defendant by Montague and Tolman, for storage in defendant's warehouse in the city of Chicago. The flour was delivered to the warehouse company December 22, 1881, for which a receipt was given in the words and figures following: "Chicago, Dec. 22, 1881. Received in warehouse from teams, car No. 534, one hundred and twenty-five barrels flour on account of Montague and Tolman, and subject only to their order hereon on payment of charges and cooperage. * * * William R. Manniere, president."

About the 25th of January thereafter, Montague and Tolman sold the flour to the plaintiff, and indorsed and delivered to him the warehouse receipt, together with the inspection certificate, showing that the flour was in good condition when inspected at the freight depot of the Chicago & Northwestern Railway, from whence it was delivered to the defendant's warehouse, and evidence was offered tending to show that it was in like good condition when received by the defendant.

The plaintiff made the purchase in the usual course of business on the inspection certificate and warehouse receipt, and examined the flour for the first time in June following, when the barrels were found to be covered with dried mud, clay and cement, and the flour musty, soured and spoiled. The barrels, according to the testimony, appeared as if they had been rolled in a cellar where a floor was being cemented, and there was evidence tending to show that the damage to the flour was occasioned by moisture absorbed from the mortar or muddy substance on the outside of the barrels. No note was made either on the inspection certificate or on the warehouse receipt, that the flour or barrels were not in good condition at the time of their delivery to the defendant, nor did the warehouse company ever give any notice as to the condition of the same; and the plaintiff testified that had he been notified he might have saved the flour by changing it into other barrels. There was also evidence tending to prove that it was custom-

ary among warehousemen when flour, received for storage, was wet or in bad order, to note it on the receipt, or to otherwise notify the owners. The court permitted the plaintiff to read to the jury the warehouse receipt for the flour, although at the same time stating that he sustained the defendant's objection to it on the ground that it was incompetent. The defendant was an incorporated company, and operated a warehouse of class " C."

At the close of the plaintiff's evidence the court, on motion of the defendant, and against the objection of the plaintiff, excluded all the evidence, took the case from the jury, and rendered a final judgment for the defendant, to all which the plaintiff duly excepted, and appealed to this court.

Among the errors assigned are the exclusion by the court of the plaintiff's evidence, and the rendering judgment for the defendant on its own finding without any verdict of the jury.

Mr. E. A. Otis and Mr. D. S. Pride, for appellant; that the presumption is that the bailee receives the articles in good order when his receipt does not show the contrary, cited I. C. R. R. Co. v. Cobb, 72 Ill. 148; I. C. R. R. Co. v. Cowles, 32 Ill. 116; Nelson v. Woodruff, 1 Black, 156.

The warehouse receipt stands in the place of the goods, and its indorsement and delivery gives the holder precisely the same rights as the original owner had: Canadian Bank v. McCrea, 106 Ill. 281; Shaw v. R. R. Co., 101 U. S. 557; German Nat. Bk. v. Meadowcroft, 95 Ill. 124.

Messrs. Paddock & Aldis, for appellee; that a bailee is not liable on the contract of bailment to the purchaser from his bailor, cited Willard v. Bridge, 4 Barb. 361; Suydam v. Smith, 7 Hill, 182.

Wilson, P. J. After the plaintiff had introduced evidence tending to show a cause of action as set out in his declaration, the court, on motion of the defendant, and against the objection of the plaintiff, excluded all the evidence, took the

case from the jury, found the issues for the defendant and rendered a final judgment in bar against the plaintiff, the court being of opinion, as is stated in the bill of exceptions, that the action could not be maintained for want of privity between the parties. The Supreme Court, as well as this court, has held that such a practice is not allowable in this State. Ware v. Nottinger, 35 Ill. 375; Bohman v. City of Chicago, decided by this court, and reported in Chicago Legal News of September 27, 1884. In the trial of suits at law when an issue of fact is joined it must be tried by a jury, unless the parties waive a jury and submit the trial of the case to the court; in other words, the right to a jury trial can not be taken from a party without his consent.

But while the correctness of the rule stated is assented to by appellee, it is contended that the present case does not come within its operation for the reason, as is claimed, that the plaintiff had stated no legal cause of action in his declaration, and hence there was nothing which a jury could properly be called upon to try. Instead of demurring to the declaration and standing by its demurrer, the defendant took issue upon the facts as alleged, and now claims that the court had the right to render a final judgment in bar upon some principle analagous to a judgment *non obstante veredicto.* Waiving for the present any question as to the applicability of such a principle to a case like the present, which we by no means concede, we proceed at once to inquire whether the declaration sets forth a cause of action.

The second count of the amended declaration alleges, in substance, that the defendant, on December 22, 1881, was a corporation engaged in the business of warehouseman, and that Montague and Tolman, at the instance and request of the defendant, caused to be delivered to the defendant for storage and safe keeping in defendant's warehouse, the flour in question, to be safely stored and kept by the defendant for a certain reward in that behalf, etc.; that the defendant made and delivered to said Montague and Tolman its warehouse receipt (setting out the same as given in the statement of facts); that afterward, to wit, on the day last aforesaid, the

Sargent v. Central Warehouse Company.

said Montague and Tolman, by their indorsement on the back of said receipt, sold, transferred and assigned the same to the plaintiff, "by means of which said indorsement and delivery of said warehouse receipt to said plaintiff, and by force of the statute in such case made and provided, said plaintiff became the owner of said flour, and succeeded to all the rights, claims and demands and causes of action which said Montague and Tolman (written '*defendant*' by an obvious clerical mistake) had under and by virtue of said warehouse receipt, at the time of the indorsement and transfer of said warehouse receipt as aforesaid."

The count then avers that at the time of the delivery of the flour to the defendant, the flour was in good merchantable condition and the barrels containing the same were dry and clean, and that it was the duty of the defendant to keep said flour in like good condition, but that the defendant took such poor and such little care of said flour that the barrels containing the same became and were wet and muddy, by means whereof the flour contained therein was greatly damaged and rendered unmerchantable.

The count contains, we think, substantially all the essential elements necessary to a legal cause of action, if by the assignment and transfer of the warehouse receipt to the plaintiff, he became thereby not only the owner of the flour, but was also invested with all the rights and remedies theretofore existing in Montague and Tolman by virtue of the receipt, since in such case it would be immaterial whether the damage to the flour occurred before or after the indorsement and transfer of the receipt to the plaintiff. That the title to the property passed to the plaintiff by the assignment and transfer of the receipt is not disputed, but it is denied by the defendant that the assignment and delivery of the receipt had the effect to transfer any cause of action existing in favor of the assignors prior to or at the time of the transfer, and it is insisted that for any such cause of action, suit can only be brought in their names. In this view of the law, after such examination as we have been able to give the subject, we are unable to concur.

The defendant operates a public warehouse, and is subject to

the provisions of the statute in relation to warehouses. Its receipts for property stored with it are governed by the statute, which in express words makes them transferable by the indorsement of the party to whom they are issued, either in blank or to another. Chap. 114, Rev. Stat., Sec. 42. By this statute warehouse receipts are made negotiable instruments, not, it is true, possessing all the qualities of bills of exchange and negotiable promissory notes which furnish protection to innocent holders, but nevertheless negotiable to the extent of transferring to the assignee all the interest, rights and remedies of the assignor therein. They are *contracts*, by which the warehouseman undertakes, for reward, to receive and safely keep the property described in them, and unless legally excused, to re-deliver the same to the depositor or to his indorsee. They are contracts for the breach of which only the parties to them could maintain an action at law in the absence of an enabling statute. The contract is an entirety. The statute having made the contract assignable, it is assignable in whole, with all its incidents, among which is the right of action in case of a breach of the contract.

Would it be a reasonable construction of a statute which makes a contract assignable, without any words of limitation to hold that anything less than the contract in its entirety was intended? Suppose the flour had been partially damaged through the defendant's negligence prior to the transfer of the warehouse receipt, and had been still further damaged after such transfer by like negligence; would it be insisted that the contract could be split up so as to make the defendant liable in two actions and to two different parties on the same contract? Under the terms of the warehouse receipt it became the duty of the defendant to deliver to Montague and Tolman or to their indorsee, on presentation of the receipt and payment of storage charges, the flour named in it, in the same condition as when received, unless he excuse himself by showing that it was lost or destroyed without his fault. The statute having made the receipt negotiable by indorsement, and Montague and Tolman having indorsed and delivered it to the plaintiff, have divested themselves of all interest in, or

rights under it. A judgment against the defendant, at the suit of their indorsee would be a bar to an action by them against the defendant.

It must be conceded that there is a dearth of authority bearing upon the precise question here involved. The general rule in relation to contracts of bailment undoubtedly is that for a breach of duty by the bailee, the action, independent of any statute, should be brought by the bailor; but the question before us is as to how far the rule is qualified or changed by the provision of the statute making the contract of bailment assignable.

In German National Bank v. Meadowcroft, 95 Ill. 124, which was an action of trover for the conversion of a quantity of barley, the Supreme Court seem to have taken it for granted that the bailee was liable to the holder of the receipt, whoever he might be, for the entire value of the property, though that case turned upon other questions not involved in this suit. In Shaw v. Railroad Co., 101 U. S., the court, in discussing the effect of an indorsement of a bill of lading attached to a time draft, said *in arguendo,* " the indorsement vested in the bank the title to the cotton as well as to the contract." In Canadian Bank of Commerce v. McCrea, 106 Ill. 281, our own Supreme Court consider the subject of warehouse receipts, without, however, discussing the question as to who are entitled to sue in case of a transfer of such receipts; but we think all of those cases may be regarded as inferentially supporting the position that the indorsee of the receipt succeeds to all the remedies of the original bailor.

From the best consideration we have been able to give the subject, our conclusions are, first, that the indorsement and delivery of the warehouse receipt had the effect, not only to transfer the title to the flour to the plaintiff, but also to give him a right of action for any breach of duty of which the defendant was guilty in respect thereto at any time during the bailment; second, that a legal cause of action is stated in the second count of the amended declaration; and third, an issue of fact having been joined thereon, which a jury had been impaneled to try, and the plaintiff having put in evidence

which tended to prove the cause of action as alleged, the court erred in excluding the same, and withdrawing the case from the jury, and in rendering final judgment for the defendant.

The judgment will therefore be reversed, and the cause remanded for a new trial.

Reversed and remanded.