LUCIUS P. DOLLIFF v. DANIEL M. ROBBINS and Another.[1]

June 21, 1901.

Nos. 12,539—(150).

## Effect of Indorsement of Wheat Tickets—Conversion of Wheat.

One Walbridge was engaged in operating a public warehouse for the receipt and storage of grain, at which he received a large quantity of wheat from different persons, and issued to them therefor the usual storage receipts. Subsequently he shipped the wheat, without the knowledge or consent of the ticket holders, to defendants, who were commission merchants, and the same was sold by them, and the proceeds applied to the payment of an indebtedness due them from Walbridge. Thereafter the ticket holders sold, indorsed, and transferred their several tickets to the plaintiff in this action, who demanded of Walbridge and said defendants the return and possession of the wheat, which was refused. *Held*: (a) That the sale, indorsement, and delivery of the tickets operated as a transfer and assignment to the plaintiff of all title to the wheat, and every remedy possessed by the holders thereof, including the cause of action for its conversion. (b) Defendants, though commission merchants doing business as such, in the matter of the sale of the wheat in question, and the appropriation of the proceeds thereof to the payment of the Walbridge indebtedness, acted in their own interests and in their own behalf, and not as mere agents of Walbridge, the warehouseman, and are liable as for its conversion.

## Conversion—Measure of Damages.

Where the conversion of personal property is accidental and under the belief that the person has the right to the property, and he acts with no wrongful purpose or intent, the measure of damages is the value of the property at the time of the actual taking and conversion. But, where the original taking and conversion is wilful and without color or claim of right, the measure of damages is the value of the property at the time and in the condition it is in when demand for its return is made. Within these rules, it is *held*, there being nothing in the record to show a wilful and wrongful conversion on the part of defendants, that the measure of plaintiff's recovery should have been limited to the value of the wheat in question at the time when plaintiff had the right to demand its return, with interest, less the storage charges and the expense of transporting

1 Reported in 86 N. W. 772.

the same from the warehouse to Minneapolis, where it was sold and converted.

Appeal by defendants from an order of the district court for Hennepin county, McGee, J., denying a motion for a new trial. Affirmed on condition.

*F. N. Hendrix*, for appellants.

*Wilson & Van Derlip*, for respondent.

BROWN, J.

Action for damages for the conversion of a quantity of wheat. The cause was tried in the court below without a jury, plaintiff recovered, and defendants appeal from an order denying a new trial.

The facts in the case are as follows: Between September 19, 1899, and May 15, 1900, and perhaps for some time prior to the first-named date, one Walbridge was in the possession of and operating two public warehouses for the handling and storing of grain for others, and was engaged in buying wheat and other grain on his own account, and storing the same in said warehouses. Between the dates stated he received for storage at his said elevators a large quantity of wheat from the farmers in the vicinity of the towns in which the elevators were located, for which he issued to them numerous storage tickets, evidencing the receipt of the wheat, and the kind and grade thereof. Two of the elevators so operated by Walbridge were located, one at Belleview, in Redwood county, and one at Echo, in Yellow Medicine county. The tickets issued for the wheat so received by him were in the usual form, and in compliance with the statutes on the subject. On August 30, 1899, defendants loaned to said Walbridge the sum of $25,000, and later on, and at different times, additional sums, aggregating in the neighborhood of $35,000. To secure the payment of this indebtedness, Walbridge issued and delivered to defendants four certain storage receipts, purporting to be for wheat deposited by them in said elevators, though none was ever in fact so deposited by them. From time to time, between the dates aforesaid, Walbridge shipped out of his said elevators to defendants, who are commission merchants doing business at

Minneapolis, Minnesota, all the wheat he had received in store therein, to be sold by them, and the proceeds applied to the payment of the indebtedness due them. Defendants received said wheat, sold it, and credited the proceeds to the account of Walbridge. The wheat so shipped to them included the wheat represented by the tickets issued and delivered to the farmers aforesaid, which are now owned by the plaintiff. Long prior to the commencement of this action, but subsequent to the shipment and delivery of the wheat to defendants, the persons to whom the storage tickets therefor were so issued by Walbridge sold, indorsed, and delivered the same to plaintiff in this action, who has since remained, and is now, the owner thereof. On July 6, 1900, plaintiff produced and tendered to defendants the storage receipts, and demanded of them the delivery of the wheat represented thereby, which demand was refused, and this action followed. Three questions are presented in this court: (1) Whether the indorsement and delivery of the storage tickets to plaintiff operated as an assignment of the cause of action for the conversion of the wheat, and, in this immediate connection, whether plaintiff in fact owned the tickets; (2) whether defendants are liable in this action as for a conversion of the wheat; and, (3) if they are, the measure of plaintiff's damages.

1. Appellants contend that because of the fact that the wheat represented by the storage tickets held by plaintiff had been shipped out of the Walbridge warehouses, and sold and converted by defendants, prior to the transfer of the tickets to him, the mere indorsement and delivery of the tickets did not operate as an assignment of the cause of action for the conversion. We are unable to concur in this contention. The tickets here in question were issued by Walbridge as a public warehouseman, and their validity, force, and effect are controlled by the general statutes of the state on the subject. By statute, such tickets are made transferable and negotiable by indorsement and delivery. They are negotiable,—not, perhaps, to the full extent of bills of exchange and promissory notes, but to the extent of transferring the title to the property to an indorsee or purchaser, together with all rights and remedies of the holder. They are contracts,

in every sense of the term, and the assignment thereof must, in the nature of things, carry with it all rights incident thereto. The general rule of law with reference to storage tickets of this character, whether issued pursuant to some statutory requirement or otherwise, is that the sale of the tickets by indorsement and delivery operates as a transfer to the indorsee or purchaser of the legal title to the commodity represented thereby, and the warehouseman becomes liable to the indorsee to the same extent as to the original holder. And in case of such indorsement and transfer the indorsee may maintain an action against the warehouseman for injury to the property, whether the injury occurred before or after the transfer of the ticket. Sargent v. Central, 15 Ill. App. 553.

This court has on several occasions given utterance, in explicit language, to its opinion as to the character of storage tickets issued by public warehousemen. It was said in Thompson v. Thompson, 78 Minn. 379, 385, 81 N. W. 204, 543 (the court speaking through Justice LOVELY), that

"The tickets designating the amount of grain, charge for storage, and the ownership of the property pass from hand to hand among our citizens, in ordinary commercial transactions, in lieu of the grain itself, and are symbolic both of the title which actually passes by such transfers, and of the money value which the property is worth at any given time."

See, also, State v. Cowdery, 79 Minn. 94, 97, 81 N. W. 750; State v. Loomis, 27 Minn. 521, 8 N. W. 758. So there can be no doubt that a transfer by indorsement and delivery of storage tickets of this kind passes to the indorsee or purchaser not only the title to the wheat evidenced thereby, but all rights and remedies possessed by the holder at the time of such transfer, as well. And we hold, without further remark, that the transfer of the storage tickets in question to plaintiff conferred upon him title to the wheat, and every right and remedy which the holders thereof possessed at the time of the transfer. The mere fact that there may have been some secret agreement or understanding between the ticket holders and plaintiff to the effect that the transfer was to be considered as conditional is immaterial, and

there was no error in the ruling of the court below on this subject. The tickets were in fact transferred by indorsement and delivery, thus conveying to plaintiff the legal title and all rights incident thereto; and the original holders could not thereafter, as to these defendants, or others who might deal with plaintiff as the owner of the tickets, be heard to assert or claim any right reserved in them of which no notice was given.

2. It is claimed by defendants that they were, in the matter of the sale of the wheat in question, the agents of Walbridge, the warehouseman, were innocent of any wrongdoing, had no notice, actual or constructive, of the rights of the ticket holders or plaintiff, and are not liable for the conversion of the wheat. The case of Leuthold v. Fairchild, 35 Minn. 99, 27 N. W. 503, 28 N. W. 218, is cited in support of this contention. The question as to the extent of the liability of a commission merchant who acts as an agent for a warehouseman at a distant point in the matter of receiving and disposing of grain shipped to him by such warehouseman, and who has no interest in the sale of the grain or its proceeds, and acts purely and solely as an agent, is not before the court in this case. The Leuthold case is not in point. In that case the defendant in fact acted in the capacity of agent and there was no intentional or other wrongful act on his part; nor was he in any way, so far as the record of the case discloses, interested in the property or its proceeds. In the case at bar, however, defendants were more than the mere agents of Walbridge. They held an indebtedness against him; had taken storage tickets from him purporting to be for wheat deposited by them in his elevators, though no wheat was by them ever so deposited, as security for the payment of that indebtedness. They had in fact no claim to the wheat in question, but it was shipped to them by Walbridge, to be by them sold and applied upon his account and indebtedness. They were interested parties, not mere agents. They acted in their own interests, and the principle of the Leuthold case has no application.

3. The last question presented in the case is as to the measure of damages. The wheat, as we have noted, was stored in the Belleview and Echo elevators. The storage tickets provided for

its return and delivery to the holder of the tickets upon demand and payment of storage charges. So long as no demand for the return of the wheat was made, Walbridge remained lawfully entitled to its possession and to its control. But upon demand, and tender of such charges, the holder became entitled to the return of the wheat or its value. Plaintiff saw fit to permit the wheat to remain with Walbridge until July 6, 1900, at which time he demanded of him its return, and, upon learning that it had been shipped to defendants, in turn demanded it of them. They refused to deliver it, and plaintiff contends that he is entitled to recover the value of the wheat on that date, with interest. It is claimed on the part of defendants that the measure of plaintiff's damages should be the value of the wheat at the time of the actual conversion, namely, at the time when the wheat was shipped to them by Walbridge.

Two rules upon the subject of the measure of damages in actions for the conversion of personal property are recognized and supported by decisions of this court. They are referred to in the following cases: State v. Shevlin-Carpenter Co., 62 Minn. 99, 64 N. W. 81; King v. Merriman, 38 Minn. 47, 35 N. W. 750; Whitney v. Huntington, 37 Minn. 197, 33 N. W. 561; Hinman v. Heyderstadt, 32 Minn. 250, 20 N. W. 155; Nesbitt v. St. Paul Lumber Co., 21 Minn. 491. The rules established and laid down by these cases are: (1) Where the conversion is accidental, and under the belief that the person has the right to the property, and acts with no wrongful purpose or intent, the measure of damages is the value of the property at the time of the actual taking and conversion; (2) but, where the original taking and conversion is wilful and without color or claim of right, the measure of damages is the value of the property at the time and in the condition it is in when demand for its return is made. And in such cases it is not material that the wrongdoer has changed the character of the property, or by improvements greatly enhanced its value. In all cases where there is no wilful or intentional wrongful act, the purpose of the law is to secure to the injured party compensation for the loss of his property. And the rule which will secure to him fair and reasonable re-

muneration for his loss is the one to be applied. Within these rules, the court is of opinion (there being nothing in the record to show a wilful or wrongful conversion on the part of defendants, nor any evidence showing gross neglect on their part to ascertain the rights of plaintiff) that plaintiff should recover the value of the property at the time of the demand for its return, less the storage charges and the expense of transporting it from the warehouses to Minneapolis, where it was sold. We adopt the time of the demand because the property was rightfully detained from plaintiff until that date, and it cannot be said to have been actually converted by defendants until the demand was made. He had the right to permit the wheat to remain in the warehouse, in the hope and anticipation of a rise in its value, and to adopt the contention of defendants that their liability should be limited to the value of the wheat at the time they received it would deprive him of that right and permit them to fix the value of plaintiff's property, and thus determine the measure of his damages. This would be in contravention of the spirit of our warehouse laws, and we cannot adopt it.

The writer of this opinion does not concur with the majority of the court in holding that there should be deducted from plaintiff's recovery the amount of storage charges due Walbridge. The claim for such charges belongs solely to Walbridge, and was not transferred to defendants by their wrongful conversion of the wheat. But the majority think the amount should be so deducted from plaintiff's recovery, and it will be so ordered.

It is therefore ordered that the order appealed from be affirmed, on condition that the plaintiff remit from the recovery, within ten days after remittitur is filed in the court below, the charges due Walbridge for storing the wheat, and the freight charges for transporting the same to Minneapolis. If plaintiff shall fail to so remit within the time aforesaid, the order appealed from will be reversed, and a new trial granted.