**The Union National Bank of Muncie, Indiana, Defendant in Error, v. Walter C. Griswold, Plaintiff in Error.**

**Gen. No. 13,892.**

1. WAREHOUSEMAN—*who proper plaintiff in action against.* The assignee of a warehouse receipt may maintain in his own name an action for the loss of the goods described and stored.

2. WAREHOUSEMAN—*when estoppel to contradict receipt does not arise.* A warehouseman is entitled to show the true contents of parcels, etc., stored, where the receipt given contains a provision as follows:

"The contents of trunks, boxes, parcels, barrels, baskets, etc., mentioned on this receipt being unknown, are stored at owner's risk."

3. WAREHOUSEMAN—*what essential to maintenance of action against.* In order to maintain an action either in tort for conversion or in *assumpsit* on an implied promise to pay the value of property stored and not returned, it is essential that the plaintiff aver and prove a tender of the storage charges.

4. PARTNERSHIP—*when established.* *Held,* that the evidence in this case was sufficient *prima facie* to show the liability of the defendant as a partner.

5. APPEALS AND ERRORS—*when refusal of court to give instructions asked by prevailing party not subject to review.* A party who has prevailed in the trial court cannot obtain a review of the action of the trial court in refusing to give an instruction upon his behalf in the absence of the assignment of cross-error.

Assumpsit. Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed June 11, 1908.

SAMUEL H. TRUDE, for plaintiff in error.

WARREN B. WILSON, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This writ of error is sued out with the purpose in view of reversing a judgment of the Circuit Court in favor of plaintiff and against the defendant for the sum of $3,108.28.

The action is *assumpsit* to recover the value of 139 bales of white cotton waste. The defendant and Frank H. Griswold, since deceased, are alleged to have been partners as warehousemen in the city of Chicago, under the name and style of "Newberry Warehouse & Storage Company." The right to recover is based upon a warehouse receipt in these words:

"F. H. Griswold, Manager.

| | |
|---|---|
| W. C. Griswold, | Floor, Basement |
| F. H. Griswold, | Section, C. & D. |
| Proprietors. | Lot 5211 |
| Goods subject to sale after | Register |
| 4 months unless charges are paid. | No. 5211 |
| | Folio |

NEWBERRY WAREHOUSE AND STORAGE COMPANY,

CHICAGO, Jan. 2nd, 1902.

Received in store by team one hundred (139) thirty nine bales W. Cotton waste, weighing sixty two thou-

sand (62500) five hundred pounds on account of Howard W. Foote and deliverable only to his order hereon on payment of all charges due and the return of this receipt. All loss or damage by fire, water, moth, ratage, leakage, rotage, the elements or by the property being perishable, and all marble and glass of whatever kind if not properly packed, at owner's risk.

The contents of trunks, boxes, parcels, barrels, baskets, etc., mentioned on this receipt being unknown, are stored at owner's risk. Storage 35 cents per bale for the first month, or any part thereof, and 25 cents per bale for each subsequent month or any part thereof.

                                        F. H. GRISWOLD,
Advances $....................            Gen'l Manager.
Freight  $....................
Cartage  $....................
                Insurance $3000.00.
                Premium $27.00.
                Time 1 year.
Nos. 79, 81 & 83 East Kinzie St."

This warehouse receipt was assigned to plaintiff by Howard W. Foote as security for a loan of $3,000.

The suit was originally commenced against defendant individually and as administrator of the estate of Frank H. Griswold, deceased, but subsequently and before the trial was discontinued as to defendant as administrator, and the cause thenceforth proceeded against the defendant alone.

The declaration consists of three counts. The main averments of the first count are that defendant and Frank H. Griswold, deceased, in the lifetime of the latter and at the time of issuing the warehouse receipt above set out, were partners at Chicago in business as public warehousemen of class C, under the firm name of "The Newberry Warehouse & Storage Company"; that on January 2, 1904, one Howard W. Foote stored 62,500 pounds of white cotton waste packed in 139 bales, for which the foregoing receipt was issued to him. That on January 24, 1902, Foote indorsed his name upon the back of the warehouse receipt and delivered

it so indorsed to the plaintiff, thereby transferring the warehouse receipt and the goods therein mentioned to the plaintiff; that Frank H. Griswold died July 1, 1902, and that thereafter plaintiff demanded of defendant, as surviving partner, the delivery of the property, and at the same time offered to pay all charges due on account of the property or the warehouse receipt, and to return the latter; that defendant refused to deliver said goods or any part thereof to plaintiff, and that said goods had neither been lost nor destroyed, nor damaged by fire, water, ratage, etc., nor by the property being perishable; that such stored property was of the value of $5,000; that plaintiff on its part has performed all the conditions of the warehouse receipt, entitling it to delivery of the property therein mentioned; that demand was made upon defendant for the value of the property, which was refused.

The second count is in all material particulars the same as the first. The third count differs from the first in that it avers that in truth and in fact the defendant and his deceased partner, doing business under the name and style of ''The Newberry Warehouse & Storage Company,'' never had any such goods in store as described in said warehouse receipt, and never had the same or any part thereof in store; that at the time of the indorsing and delivery of the warehouse receipt by Foote to plaintiff, the plaintiff advanced to Foote, in faith of the security thereof, the sum of $3,000, no part of which has been paid.

To this declaration defendant filed three pleas—first, the general issue; second, denial of joint liability; and third, denial of partnership between himself and Frank H. Griswold, deceased, under the name of The Newberry Warehouse & Storage Company, or otherwise. The last two pleas were verified.

Upon the issue thus joined the parties proceeded to trial before the court and jury, with the result mentioned in the introductory part of this statement.

The pertinent questions argued and controlling our

decision are: (1) The right of plaintiff to maintain the action in its own name; (2) proof of the partnership averred; (3) the probative force of the evidence; and (4) the rulings of the court on the admission of evidence. We will discuss and dispose of the questions in the order of their enumeration.

First. The action is properly brought in the name of the assignee plaintiff. The statutes of this state so provide. Section 24, chapter 114, R. S., title "Warehouses," is in these words:

"Warehouse receipts for property stored in any class of public warehouses, as herein described, shall be transferrable by the indorsement of the party to whose order such receipt may be issued, and such indorsement shall be deemed a valid transfer of the property represented by such receipt, and may be made either in blank or to the order of another. All warehouse receipts for property stored in public warehouses of Class C. shall distinctly state on their face the brand or distinguishing marks upon such property."

This statute is so plain and free from ambiguity as to be self-interpretive. It needs no argument or illustration to explain or point out its meaning. It means exactly what it says. "An indorsement by the party in whose name the warehouse receipt issues is deemed a valid transfer of the property represented by the receipt," says the statute, and this is sufficient to vest the right to maintain an action by and in the name of the assignee.

In Sargeant v. Central Warehouse Company, 15 Ill. App. 553, it was held that the indorsement and delivery of a warehouse receipt had the effect not only to transfer title to the stored property to the assignee, but also to give him the right of action for any breach of duty of which the warehouseman might be guilty in respect to the goods stored while they remained in the custody of the warehouseman.

Second. The facts that "The Newberry Warehouse & Storage Company" was not a corporation; that the

titles of president and secretary and treasurer were merely assumed by defendant and his deceased partner; that the office stationery and the warehouse receipt in evidence stated that these persons were proprietors of the warehouse; that the evidence of Ellis that both of the Griswolds were in charge of the warehouse and equally took part in its business until the death of Frank H. Griswold; that they each hired employes in the work of the warehouse, and were daily in attendance at the warehouse, engaging in supervising and directing its business, were sufficient *prima facie* to impose upon defendant the responsibility of a partnership with his deceased associate in that enterprise. The daily acts of the parties, shorn of the fiction that they were doing business under a corporate name, without any corporate authority, imposed upon them, at least as to innocent third parties, the relationship of partners, with its attendant obligations and liabilities.

Third.   The evidence as to what the article covered by the warehouse receipt in fact was, is very meager and unsatisfactory.   Plaintiff seems to proceed upon the theory that defendant is, by the written descriptive portion of the receipt, estopped to deny that the article stored was anything else but "white cotton waste"; that the receipt itself was *prima facie* proof that such was the nature of the article stored and that defendant could not give in evidence what the bales stored in fact contained.   But in construing the liability of the warehouseman, it must not be lost sight of that effect must be given to the receipt as a whole, and that all its clauses and provisos must be considered in arriving at and declaring the obligation and liability of the parties in faith of it.   This clause is found in the receipt: "The contents of trunks, boxes, parcels, barrels, baskets, etc., mentioned in this receipt being unknown, are stored at owner's risk."   We think the identity of the goods actually stored and intended to be covered by this warehouse receipt of the utmost importance.   More especially is its importance apparent when it is borne in

mind that the description of the goods received in store is ambiguous, and not susceptible of interpretation except by parol evidence. Such evidence is always admissible in explanation of an ambiguity patent from a reading of the words of an instrument. The evidence does not disclose the condition in which the bales were at the time of issuing the receipt, or what they contained, or how they were marked, or whether the bales had any distinctive marks upon them. In view of the proven fact that the articles were contained in bales, and the statement in the warehouse receipt that the contents were unknown to the warehouseman, can the warehouseman be denied the right to show what were the contents of these bales? We cannot reconcile our duty under the law by conceding our assent to the contention that such right should be denied.

These bales were of considerable bulk. It is but reasonable to infer that their contents could have been easily proven. From whom did Foote originally obtain these bales? This the proof fails to show, except by Foote's statement, correctly excluded as evidence, that they were sold to him by Frank H. Griswold, the deceased partner. Such proof could not be made by the evidence of Foote. If such was the fact, however, the method and manner of payment could have been established by competent evidence. Property for which $3,000 or more is paid leaves behind some earmarks and evidential facts of payment. But none was offered.

We extract from the testimony of Ellis and from other facts appearing in proof, that the so-called "white cotton waste" was the property intended to be covered by the receipt given, as it was the property actually and in fact received for storage when the receipt was given. Then again, there is no evidence on the part of plaintiff tending to show what goods were actually encompassed within the bales at the time the receipt was given to Foote. No one is produced who ever saw the contents of any one of the bales; and

whether or not the bales were marked, or if marked, how, is likewise without proof.

In the cases holding a warehouseman or railroad company concluded by their receipts and way-bills from denying that the articles specifically described in the receipt or way-bill were received for storage or shipment, and estopped from making a denial, it will be found that the articles were not only of such a character as to impute knowledge thereof to the warehouseman or railroad company, but that there was no clause or proviso, as in this case, that the contents of the packages, cases, or boxes, or whatever they may be, were unknown to the party issuing the receipt or bill. A reservation in a receipt or bill of lading that the contents of the packages are unknown is sufficient to put an assignee thereof upon inquiry to verify the statement as to contents. The cases in which the doctrine of estoppel may be successfully invoked are those where the article, whatever it may be, is in such condition as to be exposed to the sight of the warehouseman or common carrier, such as machinery, grain, cattle or the like. St. L. & I. M. R. R. v. Larned, 103 Ill. 293; Tibbits v. C., R. I. & P. Ry., 49 Ill. App. 567; Fletcher v. G. W. Elevator Co., 12 S. D. 643.

In such and like cases it is the doctrine that the warehouseman and common carrier are, as to innocent third parties, estopped to deny the truth of the statement in the receipt or bill.

Unless a warehouseman by the terms of his receipt describe the stored property, without reservation as to his knowledge of the goods in the packages, he is not bound to inspect the contents of such packages, and consequently is not liable if the articles turn out not to be as represented. In such case the duty of the warehouseman is discharged in tendering the property actually received, notwithstanding it may not answer the description in the receipt. As applied to the case at bar, the Griswolds were not bound to inspect the contents of the 139 bales delivered for storage, but were

only bound to deliver what they actually received when they issued the receipt. The statement in the receipt that the contents of the bales were unknown to them, put assignees upon notice that as to the contents of the bales they were not to be held responsible, and that whoever took by assignment without inquiring and ascertaining by inspection or otherwise what the bales actually contained, did so at their own risk.

The liability in Armour v. M. C. R. R., 65 N. Y. 111, turned upon the negligence of the carrier's agent in issuing a bill of lading for a quantity of lard upon a forged warehouse receipt, the agent being informed at the time that a draft would be drawn against the bill of lading and used in bank. The negligence of the agent was held to be imputable to the carrier, and estopped it from denying the receipt of the lard; and on this theory a recovery was sustained.

In Hall v. Milwaukee Dock Co., 29 Wis. 482, the doctrine there promulgated was that while a warehouseman is estopped from denying the description of the property in the receipt, so far as it relates to matters which are or ought to be within his knowledge, he is not liable in respect to matters which are not visible or open to inspection, and that the obligation resting upon the warehouseman was discharged upon tendering for delivery the same property actually received in store.

In Robson v. Swart, 14 Minn. 287, Swart, a warehouseman, gave a receipt for twenty sacks No. 2 wheat. The receipt was assigned to an innocent third party for value, who demanded No. 2 wheat, as called for by the receipt. The warehouseman offered to deliver the identical twenty sacks which he had received, but upon inspection the wheat therein turned out to be inferior to No. 2, designated in the receipt. It was held the doctrine of estoppel had no application, and that the warehouseman discharged his whole obligation when he proffered the identical wheat which he had received for storage.

Dean v. Driggs, 117 N. Y. 274, was an action to recover damages on a warehouse receipt for 1,400 barrels of Portland cement. The action was by an innocent holder for value of the warehouse receipt, which acknowledged to have received for storage, without any qualification or restriction, "fifteen hundred barrels of Portland cement." The barrels, when opened, proved not to contain Portland cement, but a worthless substance. The warehouseman, however, delivered the identical barrels which he actually received. A judgment for the value of 1,500 barrels of Portland cement was recovered in the trial court and affirmed on review at a general term of the Supreme Court; but the Court of Appeals reversed the decisions of the courts below, holding that while a warehouseman is estopped by his receipt in regard to any error or misstatement therein, it is only when it relates to a representation of a fact which was, or in the ordinary course of business ought to have been, within his knowledge, and upon which a third person, acting reasonably, had a right to rely. This case further holds that it is no part of the duty of a warehouseman to open packages delivered in order to ascertain their contents, and that he is not chargeable with knowledge of the contents where they are not visible and open to inspection. After reciting the facts, the court held that no warranty as to the contents of the barrels could be implied from the language of the receipt; that this was merely descriptive, and simply warranted the number of barrels stated to have been delivered; that they were marked as stated and that there was nothing in their appearance which could reasonably lead to any suspicion that their contents were not what was represented, and that consequently the action was not maintainable. A paraphrase of this language to conform to the facts in the case at bar is clearly as controlling and equally as effective to discharge the liability of defendant upon tender of the bales which were received at the time the receipt was given.

Fourth. The manifest weight of the evidence is clearly with defendant. Ellis, who was employed in the warehouse at the time the receipt was given, identifies the bales offered to Wilson on demand made for plaintiff as the identical bales received into storage when the receipt was given. There is no countervailing proof on this point found in the record. As held in the Portland cement case, no warranty as to the contents of the bales could be implied from the language of the receipt, that such language is merely descriptive, and the warranty only extended to the number of the bales. An offer to return the identical bales received was sufficient to discharge the liability of defendant as warehouseman.

Fifth. The averment of each count of the declaration was to the effect that plaintiff had tendered storage charges to the defendant when demand was made for the 139 bales of white cotton waste and the warehouse receipt tendered. On this issue was joined. No proof to support it was tendered. This was material, in any view of the case, to entitle plaintiff to possession of the goods, and, in default of delivery on demand, to maintain an action, either in tort for conversion, or in *assumpsit* on an implied promise to pay their value. The ruling of the trial court in excluding exhibit 2 and the testimony of Foote in relation to it, and his conversations with Frank H. Griswold, then deceased, was without error. For if Foote bought the 139 bales of alleged white cotton waste from Frank H. Griswold as his property, that was not a partnership transaction, and in no aspect of the case would the defendant be liable for the representation of his partner about a matter so disconnected from the partnership business, and in which the proof fails to show he had any interest. Neither would such testimony be admissible under the issues made by the pleadings. The action is not for a false warranty of the contents on a sale of the bales stored, but in *assumpsit* on an implied liability for the value of the contents of the bales stored,

for failure to deliver them to plaintiff on demand and tender of storage charges. As to all such matters the evidence of Foote is inadmissible.

The first instruction given at the request of plaintiff states the law correctly. We are not called upon to pass upon the correctness of the court's ruling in refusing to give the other instruction proffered by plaintiff, as it has failed to assign any cross-errors on such refusal. An examination of the instructions given to the jury at the instance of defendant shows that the jury were fully and fairly informed, we think, of all the essential legal principles applicable to the defense, under the proofs. The instructions refused, we think, tended to throw no additional light upon the law of the case, or to assist the jury in arriving at a more accurate verdict. If the jury had applied the law laid down by the court to the facts in evidence, their verdict must have been for the defendant.

A careful investigation of the record leads us to think that the jury may have been impressed from the evidence with the belief that Foote and Frank H. Griswold conspired together in this matter to create such surface appearances, false in fact, with the intention of misleading third parties, in which the jury may have concluded the defendant was somewhat implicated, and that plaintiff was deceived and thereby induced to advance a large sum of money upon the security of practically worthless property. Upon a new trial the plaintiff should exert every reasonable effort to bring before the court and jury all the facts preceding and entering into the obtaining of the warehouse receipt from the defendant's firm.

For the errors indicated in this opinion, the judgment of the Circuit Court is reversed and the cause remanded to that court for a new trial conformable to the views here expressed.

*Reversed and remanded.*