JAY GREER v. EQUITY CO-OPERATIVE EXCHANGE AND
OTHERS.[1]

June 29, 1917.

Nos. 20,319—(151).

**Trover and conversion — assignment of cause of action — defense — evidence.**

Action in trover for the conversion of a carload of wheat shipped over the Great Northern Railway. Unintentionally and innocently nocently the railway company and defendants converted the wheat. Thereafter the railway company paid the owners for the wheat and took from them an assignment to plaintiff of the wheat and the cause of action, and instituted this suit. Plaintiff has no personal interest in the matter. It is *held*:

(1) Defendants could set up the defense that as between them and the railway company the latter could not purchase and assert the claim of the shippers, since it committed the first act in the conversion of the wheat. out of which grew the connection of defendants with the transaction.

(2) Therefore it was proper to receive evidence showing that plaintiff had no interest in the assignment or cause of action, that the railway company paid the shippers and took the assignment for its own benefit, and instituted the action.

(3) There is no reversible error. The undisputed facts entitled defendants to a verdict.

Action in the district court for Ramsey county to recover $1,407.98 for the conversion of a carload of grain. In their answer defendants set up the facts stated in the opinion. The case was tried before Dickson, J., who when plaintiff rested denied defendants' motion to dismiss the action, and at the close of the testimony granted defendants' motion for a directed verdict. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

[1]Reported in 163 N. W. 527.

*Otis & Otis,* for appellant.

The matter set up by respondents in their answers and attempted to be proved, do not constitute a defense. Johnson v. Martin, 87 Minn. 370, 92 N. W. 221. The intention with which the act is done and ignorance of the owner's rights are not defenses in an action for conversion. Farmer, Thompson & Helsell v. Bank, 130 Iowa, 469, 107 N. W. 170; Gibbons v. Farwell, 63 Mich. 344, 29 N. W. 855; Smith v. Hartog, 23 Misc. 353, 51 N. Y. Supp. 525; 38 Cyc. 2024. This rule is well established in Minnesota. 1 Dunnell, Minn. Dig. § 1928; Kronschnable v. Knoblauch, 21 Minn. 56; Appleton Mill Co. v. Warder, 42 Minn. 117, 43 N. W. 791; Dolliff v. Robbins, 83 Minn. 498, 86 N. W. 772; Vine v. Casmey, 86 Minn. 77, 90 N. W. 158. By the assignment whatever rights Wolsted Bros. had by reason of the conversion of the wheat passed to the appellant, and if there was no defense to the claim while it belonged to Wolsted Bros. there could, of course, be no defense to it after the claim had passed to some other person by assignment. To operate as a defense to the cause of action it must have been a defense in the hands of the original assignor, which is not here claimed. See Anderson v. Reardon, 46 Minn. 145, 48 N. W. 777.

*M. D. Munn* and *Ambrose Tighe,* for respondents.

Under the acts of Congress as well as common law the Great Northern Railway Company was absolutely liable to Wolsted Bros. for the grain it converted by wrongfully diverting a car. The company settled such liability by voluntary payment of the claim filed by that firm. There was no real assignment of their claim by Wolsted Bros. The contract of assignment taken in the name of the plaintiff was a mere subterfuge and he has no interest whatever in it. The railway company is the real party plaintiff, seeking to recover from defendants for a claim made against them based on its own wrongful act, for which it made settlement. Central Trust Co. v. Burton, 74 Wis. 329, 43 N. W. 141. The company, the real party in interest, cannot now assert this claim against defendants for two reasons, viz.: (a) To permit it to do so is to allow it to recover for its wrongful act; (b) its conduct in manifesting to defendant exchange the car of grain in question on its arrival at St. Paul, and in accepting the bill of lading presented by defendant company as true and correct and reconsigning the car thereon, constituted a complete estoppel. Bofferding v. Alden, 134 Minn. 482, 159 N. W. 946.

HOLT, J.

Action in trover for the conversion of a carload of wheat. At the close of the testimony each side moved for a directed verdict. Defendants' motion was granted. Plaintiff made a motion in the alternative for judgment or a new trial. It was denied *in toto* and this appeal followed.

The evidence presents no material dispute as to the facts so far as these were attempted to be brought out. It appears that on October 11, 1915, J. J. Wolsted and O. A. Wolsted, farmers at Brookland, North Dakota, owned 1,500 bushels of wheat which they loaded into car No. 15,251 of the Great Northern Railway Company for shipment to Marfield Grain Company, at Duluth, Minnesota. The railroad company had no depot or station agent at Brookland, so that shipping bills or bills of lading could not be issued there. It was therefore the practice for the shipper, after a car was loaded, to make out shipping bills in triplicate and hand them to the conductor picking up the car at Brookland. These bills would be delivered to the agent at Rutland, the next station having an agent, who signed two, one of which became the bill of lading and the other the memorandum thereof, and returned them to the conductor to be taken back to Brookland on his return trip and handed to the shipper, or placed in a box accessible to shippers, and the other would be retained by the railway, and from it the agent makes out the way bill accompanying the shipment. In this instance, the shippers pursued the usual practice and made out in triplicate the form for a straight bill of lading for this car of wheat, consignors Wolsted Bros., consignee Marfield Grain Company, destination Duluth, Minnesota. The car moved under the way bill from one division point to another, but instead of arriving at Duluth it was diverted at Willmar and sent to St. Paul.

The way bill, produced by the railway company at the trial, was received in evidence, and appears to have the signature of the first conductor out of Rutland. In this way bill the destination is St. Paul, C. H. Clark the consignor, and Equity Co-Operative Exchange the consignee. The only bill of lading in the record corresponds to this way bill. Mr. Wolsted testified that the original bill of lading received by him was sent to Marfield Grain Company, the consignee therein named,

at Duluth, but it was not produced at the trial. An inspection of the way bill and the bill of lading, in this record, discloses the same hand-writing in both. The testimony shows that the name of the agent at Rutland is Phillips. The name of the agent purporting to have issued the bill of lading is Wapelton. There is no direct evidence that the way bill in the record is not the one under which the car moved from Rutland to St. Paul. However, Brady, the first conductor out of Rut-land, says the entries in his record made from the way bill indicate Duluth as destination, so does the conductor who took the car to Will-mar and delivered the way bill to the agent at that division point. Reading between the lines, it is manifest that someone practiced a fraud upon the carrier and falsified its records, but whether this was done by one of its agents or by C. H. Clark, the consignee in the bill of lad-ing in evidence, is not in any manner disclosed. It is difficult to see how the fraud could have been carried through unless some servant of the carrier actively participated therein, for the way bill was always in the possession of its servants and agents.

In the forenoon of October 15, 1915, a person, claiming to be C. H. Clark, appeared in St. Paul at the office of defendant the Equity Co-Operative Exchange Company, the consignee named in the way bill, stating that this and another carload of wheat had by him been consigned to it for sale on commission, and desired to know if the cars had ar-rived. By telephone it was ascertained that this car was then in St. Paul. Later in the day the Exchange Company received notice in the customary way, by mail, from the railroad company, of the arrival of the car. At the direction of Clark said defendant, as commission broker, sold the car on the market to defendants Hohle Bros. Immediately after the sale, and presumably in the forenoon of the same day, the Equity Co-Operative Exchange Company, at Clark's request, advanced him money on the car, pending the adjustment of the total purchase price by weighing and turning it over to the purchasers, and received the bill of lading in question. Thereafter the bill of lading was surrendered to the carrier, who accepted the same and issued another to the pur-chasers upon a reconsignment of the car of wheat. The balance of the purchase price was paid Clark some time in November. Wolsted Bros. soon thereafter learned that the wheat had not reached the intended

destination, and asserted a claim against the Great Northern Railway Company, the carrier. And in January, 1916, the company paid Wolsted Bros. in full for the wheat and procured them to assign the same and their claim to plaintiff, an employee of the Marfield Grain Company. It is conceded that plaintiff has no personal interest in the cause of action. It belongs to the railway company and is prosecuted by it.

The car of wheat belonged to Wolsted Bros. They had a cause of action against any one who, without express or implied authority from them, disposed of it. This would include both defendants, for neither attempts to derive any right to the wheat or its disposition from Wolsted Bros., the owners. Under Johnson v. Martin, 87 Minn. 370, 92 N. W. 221, the defendant Equity Exchange Company exercised enough dominion over the wheat, in making the sale as a commission broker, to hold it liable for conversion. And if plaintiff, as representing the Great Northern Railway Company, can stand in Wolsted Bros.' shoes in respect to defendants, the verdict should have been directed for him and not for defendants.

As a general proposition it is true that a claim good in the hands of an assignor is equally good and free from defenses in the hands of his assignee. Plaintiff states: "We are willing to admit that a counterclaim might be set up as against one plaintiff whereas it could not be set up as against another in a case where the cause of action is the same; but a defense * * * must be something that can be maintained against the claim itself without regard to the person who owns it." The proposition is plausible, but we think the theoretical distinction between counterclaim and defense must sometimes yield to what is practical in the administration of justice.

In a case of this sort, involving the liability as between parties who have unintentionally converted some third person's property, we think a defense may be available, though not strictly a counterclaim or set-off. Suppose a servant had innocently converted this carload of wheat at the bidding of his master. Both would have been liable to Wolsted Bros. Could the master have paid Wolsted Bros., taken an assignment of the wheat and claim, and then sued his servant, without the servant's being able to defend successfully by alleging the fact, viz., that

what he did was at the assignee's behest? To state the proposition is sufficient demonstration of the availability of the defense. We must ascertain in what relation the railway company and these defendants stand to this conversion, and to one another therein, in order to see whether the defense asserted by defendants is good as to them. In taking this assignment the railroad company was not a voluntary purchaser. It could not escape the payment it did make to Wolsted Bros. for its conversion of their wheat. The company, by taking the assignment, could, without doubt, become subrogated to the rights of Wolsted Bros. as against Clark, or as against the one who practiced the fraud whereby its unintentional conversion of the grain was brought about. But as to these defendants, whose innocent part in the conversion occurred subsequent to the railway company's wrongful act, and, in a measure, because thereof and in reliance upon its conduct in the premises, we think plaintiff is not in a position to claim as assignee of Wolsted Bros. and with the same rights. The defendants Hohle Bros. obtained possession of the wheat and paid for it when the railway company accepted as its genuine bill of lading the one turned over by Clark. As between Hohle Bros. and the company, the latter should be held to know whether or not the instrument was valid and issued by its agent. There is no suggestion that Hohle Bros. did not purchase and pay for the car of wheat in the utmost good faith. The same may also be said of what the Equity Co-Operative Exchange did in the premises. On inquiry of the railway company it learned that this wheat was consigned to it. This was confirmed by written notice later in the day or next morning. Clark tendered a bill of lading therefor, purporting to be issued by the railway company. This, as already stated, was recognized as valid by the company and accepted by it when the wheat was reconsigned by Hohle Bros. Had the railway company then repudiated the bill there would have been a chance for both defendants to have averted the loss, at least to a certain extent, for Clark was not paid the full amount until the following month.

Assuming the bill of lading to be a forgery, there is no pretense that either defendant had notice thereof, or of facts arousing the slightest suspicion in that direction. The railway company in legal contemplation converted the wheat when, at Willmar, it undertook to haul the

car to St. Paul instead of to Duluth. Defendants' connection with the wheat grew out of that wrongful act of the railway company. As between the real parties to this action, the railway company was the first in the conversion, and more at fault than defendants, or either of them. And under that situation, it cannot now claim that the transaction with Wolsted Bros. was a purchase of the wheat, so as to eliminate the equities existing as between it and defendants.

At the trial plaintiff took the position that it was no concern of defendants whether he held the assignment from Wolsted Bros. in his own right or for the benefit of the railway company, and cites: Anderson v. Reardon, 46 Minn. 185, 48 N. W. 777; Longfellow v. McGregor, 61 Minn. 494, 63 N. W. 1032; Klein v. Funk, 82 Minn. 3, 84 N. W. 460; Dolliff v. Robbins, 83 Minn. 498, 86 N. W. 772, 85 Am. St. 466. We are of the opinion that it was. Had plaintiff obtained the assignment from Wolsted Bros. in behalf of C. H. Clark and sued the railway company in conversion, surely a defense would have been permitted, grounded on facts creating an estoppel against Clark. The evidence was therefore properly admitted, showing that the railway company had the transaction with Wolsted Bros., what the transaction was, and that plaintiff was merely a nominal party, having no personal interest in the suit.

We have examined the other errors assigned on other rulings at the trial, and find nothing requiring a different conclusion than the one reached by the learned trial court.

Order affirmed.