## GRISWOLD, PEARL & CO.

v

## F. A. & A. W. SCOTT.

### May Term, 1894.

*Sale.  Delivery.  Title may pass without.  Course of business.*

1.  A contract of sale may pass the title to the property sold, as between the parties, without delivery.

2.  The plaintiffs were wholesale and the defendants retail dealers in flour, and the defendants were accustomed to purchase of the plaintiffs by the carload. The flour was charged in open account to the defendants at the date of the purchase whether it had arrived or not, and was usually paid for within thirty days. At the date of the purchase if the flour was then there, otherwise upon its arrival, the plaintiffs stencilled the name of the defendants' firm upon each barrel and piled them together in a particular part of the store, from where it was taken by the defendants as they had occasion to use it; and it was the understanding of the parties that the business should be conducted in this way.

*Held*, that as between the parties, the title had passed to a carload, which had been marked, set apart, and upon which the defendants had made a partial payment.

Book account.    Heard upon the report of an auditor at the December term, 1893, Caledonia county, ROWELL, J., presiding.  Judgment for the plaintiffs to recover the amount found due excluding the value of the flour in dispute. The plaintiffs except.

*Harry Blodgett* and *W. P. Stafford* for the plaintiffs.

The partial payment takes the case out of the statute of frauds.  *Richardson* v. *Squires*, 37 Vt. 640.

As between vendor and vendee the delivery in this case was sufficient.  *Birge* v. *Edgerton* 28 Vt. 295; *Bemis* v. *Morrill*, 38 Vt. 153; *Hunt* v. *Thurman & Martin*, 15 Vt. 336; *Sanborn* v. *Kettredge*, 20 Vt. 638; *Green* v. *Merriam*, 28 Vt. 801: *Gibbs* v. *Benjamin*, 45 Vt. 124; *Goddard* v. *Binney*, 115 Mass. 450; *Thompson* v. *Gray*, 1 Wheat 75.

The general property may be in the vendee, although the vendor retains a lien for the purchase price.  *Root* v. *Lord*, 23 Vt. 568; *Frazier* v. *Simmons et al.*, 139 Mass. 531; *Morse* v. *Sherman*, 106 Mass. 430; *Gaskins* v. *Warren*, 115 Mass., 514, 533; *Safford* v. *McDonough*, 120 Mass. 290; *Goddard* v. *Binney*, 115 Mass. 454; *Freight Co.* v. *Stannard*, 44 Mo. 71; 100 Am. Dec. 245.

*Bates & May* for the defendants.

There being no written memorandum of the sale the statute of frands was a bar to a recovery.  *Read* v. *Barlow*, 1 Aik. 145; *Wilkins* v. *Stevens*, 8 Vt. 214; R. L. Ch. 37.

There was no completed sale.  There was no delivery nor acceptance.  *Gibbs* v. *Benjamin*, 45 Vt. 124; Saund., Plead. and Ev. 536; 1 Chitty's Plead., 345, 347; *Stearns*

v. *Washburn*, 7 Gray 188 ; Benj., Sales, ss. 313, 317, 1117, 1118 ; *Messer* v. *Woodman*, 22 N. H. 172 ; *Bushel* v. *Wheeler*, 15 Q. B. 442 ; *Proctor* v. *Jones*, 2 C. & P. 532 ; *Saunders* v. *Topp*, 4 Ex. 390 ; *Dyer* v. *Libbey*, 61 Me. 45 ; *Morton* v. *Tibbett*, 8 Ex. 814 ; *Coombs* v. *R. R.*, 27 L. J. Ex. 401 ; *Smith* v. *Hudson*, 6 B. & S. 431 ; 1 Benj., Sales, 174 *et seq* ; *Ice Co.* v. *Webster*, 62 Me. 341.

The former course of business was no part of this contract. *S. W. F. and C. P. Co.* v. *Stannard*, 44 Mo. 71 ; *Knight* v. *Mann*, 118 Mass. 143.

TYLER, J. It appears by the auditor's report that the plaintiffs had been partners for about ten years, doing a wholesale business in flour, grain and feed at St. Johnsbury. The defendants were retail dealers in groceries and flour at the same place. They had purchased flour of the plaintiffs to a considerable amount for eight years, by the carload and in less quantities, as their business required. The plaintiffs' store was near the railroad track, to which a side track had been built so that a carload of flour could easily be unloaded at their store.

Prior to the 16th of September, 1892, the defendants had been in the habit of purchasing flour of the plaintiffs and having it marked on one end with a stencil furnished by the defendants, as follows : "Lily White," "Put up expressly for N. M. Scott & Son," in large letters, the letters being shaded, and after being so marked, the flour was put in a pile by itself in some part of the plaintiffs' store, and the defendants got it as they wished to deliver it to their customers, rendering no account to the plaintiffs for the same. When a lot of flour was purchased the plaintiffs charged it to the defendants and immediately sent a bill of the same to them. The plaintiffs put the defendants' mark upon the barrels when purchased, if the flour had arrived at the time of purchase, if not, it was put on immediately after the ar-

rival of the flour at the plaintiffs' store, and then the flour piled up for the defendants' use. The defendants had no key to the plaintiffs' store and had to take the flour away when the store was open. When the plaintiffs sold the defendants a car load of flour that had not arrived they charged it to the defendants and sent them a bill of the same upon which was minuted, "to arrive." This course of dealing had been pursued by the parties down to the 16th of September, 1892, when the carload of 125 barrels of flour was ordered which is in dispute.

The auditor further found, from the course of dealing between the parties, that they had an understanding that the business was to be carried on in that manner until one of them gave notice to the other to the contrary, but no agreement to that effect was found.

On the 16th of September, 1892, one of the plaintiffs called at the defendants' store and had a conversation with them about selling them a carload of 125 barrels of flour made by the Eldred Mills Company of Jackson, Mich., a kind and quality well known to both parties, and such as the defendants had been accustomed to purchase of the plaintiffs. This had been mentioned between them the day previous, and the defendants had been shown the quotations. They then had on hand sufficient flour of this kind to supply their trade for some time which had been purchased and marked and was then stored in the plaintiffs' store as before stated, and they hesitated about purchasing another carload at that time. It was talked between them that the flour would not be likely to arrive for six weeks, and the defendants ordered this carload of 125 barrels at the price charged. At the time the order was given the defendants knew and were informed that the plaintiffs would order this carload of flour that day by telegraph. The next day the plaintiffs sent the defendants a bill of this carload marked, " to

arrive," and charged it to the defendants on the plaintiffs' books.

The car of flour so ordered arrived in St. Johnsbury on the night of the 12th of October, 1892, was set in on the side track at the plaintiffs' store within a day or two, was unloaded by the plaintiffs and marked with the defendants' name by using the stencil, and was piled up together just south of the elevator, in the second story of the plaintiffs' store near where other flour marked in the same way was standing, and from which the defendants were taking flour as they had occasion to deliver it to their customers. This was all done as early as the 15th of October, 1892, and the plaintiffs had then done everything to and with this carload that they were accustomed to do with the flour they had before sold the defendants, and what both parties expected would be done with it when it arrived.

It was the plaintiffs' custom to send to their customers monthly statements, dated on the first of each month, showing how their accounts stood. They sent the defendants a statement, dated October 1, 1892, on which was written, "Flour is all in." It also contained the charge in dispute. The date when this statement was sent and received did not appear.

The plaintiffs had a running account with the defendants. October 19, 1892, the defendants paid the plaintiffs $300 on account. At that time, not including the flour in controversy, the defendants owed the plaintiffs a balance of only $102.24, and it was intended that this payment should apply on the running account which included this charge for flour.

On the night of October 30, 1892, the plaintiffs' store and contents, including the flour in dispute, were destroyed by fire.

Of the $300 payment, $197.76 must have been on account of this flour, which payment relieved the contract from the statute of frauds.

The main question is whether there was such a delivery of the property as will enable the plaintiffs to recover the price. The controversy is between the parties to the contract and must be decided according to their relation to the contract and to the property, and without inquiry what the case would have been had it arisen between one of the parties and an attaching creditor.

It is a general rule of law that the title to personal property may pass as between the parties to the contract of sale, and yet be ineffectual as against the creditors of the vendor. As between the parties to the sale of a chattel, the title may pass without delivery. If nothing more is to be done by them to complete their contract, then the title passes without delivery. *Birge* v. *Edgerton*, 28 Vt. 295 ; *Bemis* v. *Morrill*, 38 Vt. 153.

This contract of sale must also be construed with reference to the course of dealing between the parties, for this became a part of the contract. It had been the custom of the plaintiffs for several years to mark the defendants' flour when it arrived and set it apart for them in the plaintiffs' store, and it had been the custom of the defendants to take it from the place where it was piled as they required it. Both parties seemed to treat this marking and setting apart as a delivery to the defendants. In *Green* v. *Merriam*, 28 Vt. 801, the defendant purchased some sheep of the plaintiff, separated them from the rest of the plaintiff's flock, put them into another yard of the plaintiff and employed the plaintiff to keep them for him a specified time. It was held that the defendant had accepted and received the sheep sufficiently to comply with the statute of frauds, and that the plaintiff could maintain the action of book account for the price.

In Benj. on Sales, s. 469, it is said that when the property sold is not specified, and the seller may satisfy his contract by furnishing any property of the requisite character,

it follows from necessity that no property passes until the goods are appropriated to the contract; but when property is sold to be taken out of a specific mass of uniform quality, title will pass at once upon making the contract, if such appears to be the intent. If the goods are in the possession of the vendor he may constitute himself bailee. The reason is that selection is immaterial when the quality is uniform. This proposition, the author says, is supported by the weight of American authority. In section 488 he says that after an executory contract has been made, it may be converted into a complete bargain and sale by specifying the goods to which the contract is to attach, or by the appropriation of the specific goods to the contract.

In *Dyer* v. *Libby*, 61 Me. 45, the hay in controversy had been taken from the plaintiff's mow by men employed and paid by the defendant. It had been pressed, put into bands, weighed and branded with the defendant's name. These acts were held sufficient to constitute a delivery, if accompanied by the intention of both parties that the property should then pass.

According to the facts reported the general property in the flour had passed from the plaintiffs and vested in the defendants before the destruction by fire. There had been a delivery by the plaintiffs and an acceptance by the defendants according to the usual course of dealing between the parties. The same acts had been done by the plaintiffs in respect to this carload of flour that had been done by them with other carloads. No right of rejection remained to the defendants, for it was in fact of the quality ordered by them. It had been stencilled and set apart for them, and they had made a payment that covered a part of the price.

This is unlike the case of *Gibbs* v. *Benjamin*, 45 Vt. 124, and other cases cited by the defendants' counsel, where something remained to be done by one or both of the parties before the delivery. In *Gibbs* v. *Benjamin* it was part of

the contract that the parties should measure the wood and ascertain the quantity. They met for that purpose and disagreed about the terms of the contract, one party insisting that it meant "running measure," and the other that it called for solid cords. Here nothing remained to be done by either party but payment of the price by the defendant.

The case is unlike *State* v. *O'Neil*, 58 Vt. 140, where it was evidently understood by O'Neil and his customers that he was not to part with his title to the goods until the price was actually paid. Both parties testified before the auditor that the terms of sale of flour were cash on delivery; but the auditor finds that but very little of the flour sold by the plaintiffs to the defendants was in fact paid for on delivery, but that it was charged into the account and paid for in some short time, usually within thirty days So we think it cannot be maintained, in view of the course of dealing, that this sale was for cash on delivery. The auditor does not so find it.

It was argued that the defendants were not bound to accept a delivery of the flour until the expiration of about six weeks from September 16th, but this cannot be maintained. The order was unqualified. No definite time for the arrival was stated. It was merely "talked between the parties that it would not be likely to arrive for about six weeks."

*Judgment reversed and judgment for the plaintiffs to recover the larger sum named in the report.*

Start, J., did not sit, being engaged in county court.