NEW YORK CENTRAL RAILROAD COMPANY *vs.* MAX FREEDMAN. SAME *vs.* SAME.

Suffolk.      October 20, 1921. — November 26, 1921.

Present: RUGG, C.J., CROSBY, CARROLL, & JENNEY, JJ.

*Conversion. Carrier,* Of goods.   *Sale. Practice, Civil,* Election of remedy. *Election. Bailment. Damages,* For breach of contract, Recoupment. *Contract,* Performance and breach.   *Evidence,* Relevancy and materiality, Opinion: expert.

By order of one, who had agreed to purchase certain second hand electrical arc lamps under a contract in writing by the provisions of which he paid a certain amount at once and agreed to pay the balance when the seller, an Illinois corporation, had "loaded the lamps, and before shipment," the seller was directed to forward the lamps by a specified carrier "for delivery in Boston over" a railroad operating in Massachusetts "sight draft attached to bill of lading," and, with the approval of the purchaser, the lamps were delivered to the initial carrier in Illinois by the seller, which received from it "a negotiable or order bill of lading in the usual form, approved by the Interstate Commerce Commission," containing a provision, made applicable to all carriers taking part in the shipment, that "The surrender of this Original Order Bill of Lading shall be required before delivery of the property," and the seller drew on the purchaser at sight for the amount of the balance of the purchase price and sent the draft with the bill of lading attached to a bank near Boston which notified the purchaser that it had the draft with the bill of lading attached. By reason of a failure of some employee of a carrier along the route of shipment to make a notation, customary in the circumstances, upon the way-bill, that the surrender of the bill of lading should be required before delivery, the employees of the final Massachusetts carrier had no notice of such requirement and the purchaser was able to and did claim and receive the lamps from the carrier after paying freight and demurrage charges and without paying the balance of the purchase price. The Massachusetts carrier thereupon brought against the purchaser an action for conversion of the lamps and, ten months later, after having received from the seller an assignment of its claim against the purchaser in return for a payment of the balance of the purchase price in settlement of a claim the seller had made against it for

wrongful delivery of the goods, the Massachusetts carrier brought a second action against the purchaser in contract based upon the assignment. The actions were tried together. The judge refused to require the plaintiff to elect as between the actions and to rule that, if the jury found a verdict for the plaintiff in one action, they should find for the defendant in the other. At the close of the evidence, it was stipulated and agreed, and the judge charged the jury, that, if there were judgments for the plaintiff in both actions, but one of them should be satisfied. *Held,* that

(1) The bringing of the first action was not inconsistent with the right to prosecute an action on the contract originally vested in another person and founded on a distinct and independent right;

(2) The plaintiff was not obliged to elect as between the actions;

(3) The judge properly refused to instruct the jury that there could be a verdict for the plaintiff in one action only;

(4) The first action not being based upon an assignment from the seller, requests in that action for rulings relating to a lack of such an assignment when the action was brought were not applicable and properly were refused;

(5) The right in the plaintiff to possession of the goods under the provision of the bill of lading until the bill of lading properly was surrendered still existed although the plaintiff did not know of that provision and although it had received from the defendant payment of all freight and demurrage charges;

(6) The plaintiff's right to immediate possession as bailee or as agent entitled it to maintain the action for conversion against one whose taking was wrongful, although the plaintiff was not the general owner of the goods;

(7) A finding being warranted that the defendant knowingly took wrongful possession of the goods, no demand was necessary before bringing the action for conversion;

(8) In the action for conversion, a belief on the part of the defendant, that his receipt of the goods was justified because of the plaintiff's surrender of its actual possession, was no defence.

In the action of contract above described, the defendant in his answer claimed in recoupment damages alleged to have been caused by breaches on the part of the seller of provisions of the contract of sale. There was a verdict for the plaintiff. The bill of exceptions did not purport to contain all the material evidence. So far as appeared, there was no evidence admitted bearing upon recoupment which entitled the defendant to go to the jury on that issue. *Held,* that exceptions by the defendant to refusals by the judge to grant requests for rulings relating to recoupment must be overruled.

At the trial of the action of contract above described, evidence, offered by the defendant and tending to show notice by him to the seller, after he had received the goods and before the institution of the action, of claims by a third person against him for failure to perform a contract of resale of the goods, made subsequently to his contract of purchase, and also evidence of damages which he was required to pay in settlement of the claim of such third person, properly was excluded, and requests of the defendant for rulings based on a contention that he should be allowed damages so sustained in recoupment properly were refused, because it did not appear that such losses sustained by the defendant grew out of the contract between the defendant and the plaintiff's assignor nor that they were such as must have been in contemplation by the parties when that contract was made.

The defendant, in the course of the trial above described, testified that he sold the material in the lamps. He was then asked in his own behalf, "What did you have to do before you sold the material, or what did you do?" The question was excluded subject to an exception by the defendant. No offer of proof, was made, and it did not appear that the subject matter of the question was relevant to any issue in either suit. *Held,* that no error appeared and the exception must be overruled.

At the trial above described, a witness for the plaintiff testified that he had been in the business of selling new and second hand metals for twenty years; that he dealt in second hand arc lamps of the kind sold by the light company to the defendant, that they were well known lamps of standard form, and that he was familiar with their construction and value; and, subject to an exception by the defendant, he testified as to the metal contents of the lamps, that the copper and brass of which they largely consisted were scarce between the date of the contract and the time of the actual receipt of the property by the defendant, and that the price of metals during that time had an upward tendency. He also testified as to the fair market value of the lamps as junk. It appeared from the bill of exceptions, which did not purport to contain all the evidence, that the lamps described by the witness were, or might have been found to be, of the kind sold by the light company to the defendant and that they were of standard form. There was no evidence that the witness knew the date when these particular lamps were made, or that he had ever seen them. In his testimony, he assumed that the component parts of the lamps were as stated by the defendant. *Held,* that the admission of the opinion of the witness as to the amount of copper and brass contained in the lamps and as to the price thereof was a proper exercise of discretion by the judge; and that there was no error in the admission of the testimony.

CONTRACT OR TORT, with a declaration as amended in two counts, the first of which was waived by the plaintiff, and the second of which was for conversion of "one carload of second-hand electric arc lamps, called second-hand electrical machinery." Writ dated October 19, 1917; also an action of

CONTRACT for $2,102, alleged to have become due to the Central Illinois Light Company, which in writing had assigned to the plaintiff all of its rights under the contract of sale hereinafter described. Writ dated August 16, 1918.

In the second action, the defendant in his answer sought damages by way of recoupment for alleged breach by the Central Illinois Light Company of the contract of sale upon which the action was based.

The actions were tried together before *Quinn,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings, applicable to the first action:

"1. The plaintiff in this suit not being the assignor, and not having the assignment of the contract at the time of bringing this action cannot recover on its count of conversion.

"2. It appearing upon all the evidence the plaintiff at the time of the alleged conversion did not have title to the merchandise in question, the title being especially retained in the vendor as shown by the bill of lading, and the conversion not being assignable, the verdict should be directed for the defendant in this action.

"3. The plaintiff having voluntarily parted with possession as bailee, and all rights of possession, cannot recover.

"4. The freight and demurrage having been paid by the defendant at the special request of the plaintiff, the plaintiff lost his special property in the merchandise and all rights of possession, and cannot recover in this action.

"5. The plaintiff having procured the defendant to pay freight and demurrage charges on the property in question, and having of its own volition therefor, voluntarily relinquished its possession to the defendant, it cannot be now heard to say that the defendant's acceptance of possession of the merchandise or retaining possession thereof is an unlawful conversion thereof, as to this plaintiff."

The defendant also asked for the following rulings, applicable to the second action:

"1. The plaintiff in this suit not being the assignor, and not having the assignment of the contract at the time of bringing this action cannot recover on its count of conversion.

"2. The defendant is entitled to all loss sustained by the defendant by reason of the liability of the defendant to the third party for breach of contract, because of the delayed delivery of the goods caused by the plaintiff.

"3. The plaintiff having voluntarily parted with the possession cannot recover in this action.

"4. The defendant in recoupment may recover damages in recoupment, if shown, up to the amount of the plaintiff's claim.

"5. The defendant in recoupment is entitled to recover in recoupment for all the expenses sustained by him in making the merchandise marketable, such as dismantling the lamps, time spent and labor performed.

"6. Upon all the evidence the jury must find a verdict for the defendant."

The requests were refused.

The defendant also asked that the jury be instructed that, if they found a verdict for the plaintiff in one action, a verdict for the defendant should be entered in the other. The request was refused.

At the close of the evidence and before the charge, it "was agreed by the parties and stipulated by counsel that if the plaintiff recovered judgment in both actions and such judgment be satisfied in either, an entry of judgment satisfied will be made in the other action," and the judge, at the beginning of his charge, stated: "You need not be concerned with the question of whether there is a recovery in one suit or both suits because it is undisputed that there will only be one payment of either action and that such payment will work a solution of the other judgment."

The jury found for the plaintiff in each action in the sum of $2,102 with interest; and the defendant alleged exceptions.

*A. T. Smith,* for the defendant.

*W. L. Parsons,* for the plaintiff.

JENNEY, J. The defendant, on December 6, 1916, contracted with the Central Illinois Light Company for the purchase of arc light lamps, then in use in Peoria, Illinois. By written agreement, he was obligated to purchase and the light company to sell the lamps. At the time of making the agreement, he paid $200 on the purchase price, and the balance was to be paid when the seller had "loaded the lamps, and before shipment."

On March 27 and 30, 1917, the light company telegraphed the defendant requesting shipping instructions. In reply, he directed that company to forward the lamps by a specified carrier "for delivery in Boston over the Boston & Albany Railroad, 'sight draft attached to bill of lading.'"

The lamps were delivered on April 23, 1917, with the defendant's approval for transportation to Boston, the initial carrier being the Toledo, Peoria and Western Railway Company; and the light company obtained from that railway "a negotiable or order bill of lading in the usual form, approved by the Interstate Commerce Commission." In this bill of lading, the light company was named as shipper and the goods were consigned to its order at Boston

with instructions to notify the defendant. It specified that the goods were to be routed over the Boston and Albany Railroad of which the plaintiff, New York Central Railroad Company, was lessee. The following provisions were contained therein:

"It is mutually agreed, as to each carrier of all or any of said property (described in the bill) over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property that every service to be performed hereunder shall be subject to all the conditions herein contained and which are agreed to, by the shipper and accepted for himself and his assigns.

"The surrender of this Original Order Bill of Lading shall be required before delivery of the property."

The light company drew at sight on the defendant for $2,102, the balance of the purchase price, and sent the draft with the bill of lading attached thereto to the Brookline Trust Company, Brookline, Massachusetts, for collection. That company on April 27, 1917, notified the defendant that it held the draft with bill of lading attached. Although he received notice, the defendant did not pay the draft nor take up the bill of lading.

It was customary to make out way-bills to accompany freight in transit from one railroad to another, and in cases where an order bill of lading was issued by the initial carrier for that carrier to make a notation on the way-bill to show that there was such bill of lading outstanding, so that in the usual course of business this information was transmitted by successive way-bills to the final or delivering carrier, in order that its employees could require surrender of the bill of lading before delivering the merchandise. In this instance, however, by reason of the failure of some railroad employee between Peoria and Boston — at what point did not appear — this notation was omitted; and in consequence of this omission, the employees of the plaintiff had no knowledge or notice that there was an outstanding order bill of lading.

The defendant on June 14, 1917, paid the freight charges on the shipment and on June 21, 1917, the demurrage charges thereon, and on or about June 20, 1917, took the goods from the railroad. The delivery clerks did not request the surrender of the bill of lading, and the defendant received the merchandise without having taken up the draft and without having in his possession

or offering to surrender the bill of lading. There was no evidence justifying a finding that the defendant disclosed to the plaintiff the fact that there was an order bill of lading outstanding. The defendant has never paid to any one the purchase price of the lamps nor the draft drawn on him therefor.

Thereafter, the light company made a claim against the plaintiff because of the delivery of the lamps without requiring the surrender of the bill of lading, and the plaintiff paid that company $2,102 in settlement of its claims; whereupon, on May 13, 1918, it assigned all its interest in said lamps and all claims or causes of action against the defendant for the balance of the purchase price or otherwise.

The plaintiff sued for conversion of the lamps, the action being brought on October 19, 1917. After the assignment, it brought a second action in contract on August 16, 1918. While the action first brought is described in the writ as of contract or tort, the case was submitted to the jury upon a count for conversion, the only other count having been waived.

The actions were tried together and resulted in each case in a verdict for the plaintiff for $2,102, the amount of the draft, which was also the amount claimed by the plaintiff to be the balance of the purchase price of the goods.

The exception first considered is to the refusal of the judge to compel the plaintiff to elect upon which action it relied. A request was made for such an election after the plaintiff's opening and again at the close of the evidence. In this connection we consider the exception to the refusal to instruct the jury, that if it found a verdict for the plaintiff in one case it must render a verdict for the defendant in the other. It is assumed that this question is not within the authority of *Corbett* v. *Boston & Maine Railroad,* 219 Mass. 351, 357, as it is not procedural. The objection is not based on the contention that the plaintiff, by bringing its action in trover, has elected to have relief apart from the contract obligation to pay for the merchandise and hence cannot prevail in its action in contract. Indeed that defence to the second action would have been without avail. The alleged conversion was based on the wrongful interference with the plaintiff's possessory right. The claim in contract was upon an agreement between the defendant and the plaintiff's assignor, and the plaintiff had

no right in contract until some months after the action in tort had been commenced. The bringing of the first action was not inconsistent with the right to prosecute an action on the contract originally vested in another person and founded on a distinct and independent right. The possible differences in the rules as to damages, and the forms of executions, do not necessarily render the causes of action inconsistent. For the same reasons, the plaintiff was not obliged to elect. As these actions were not inconsistent, the judge properly refused to instruct the jury that there could be a verdict for the plaintiff in one case only. The jury were instructed that the plaintiff, while it might recover judgment in both actions, could have but one satisfaction, and the parties stipulated to that effect. See *Saxon* v. *New York, New Haven & Hartford Railroad*, 214 Mass. 383, 398; *D'Almeida* v. *Boston & Maine Railroad*, 224 Mass. 452, 455.

In the action for conversion the defendant excepted to the refusal of the court to give five requests for rulings. The first and second of these were rightly refused. This action was not based on the assignment made after its institution, and it was not submitted to the jury on any issue involving it.

The remaining requests so made related to the defendant's contention that the action could not be maintained because the plaintiff voluntarily relinquished its possession to the defendant, and because the plaintiff received from the defendant payment of the charges accruing to it for freight and demurrage. The latter position apparently is founded on the assumption that the plaintiff's only right to possession was in order to secure payment of its own claim for demurrage, its own charge for freight and those of the initial and intervening carriers; but the right of possession was not so limited. Under the controlling terms of the bill of lading, the plaintiff had the right to the possession of the merchandise until the bill of lading had been surrendered properly. This right still existed, notwithstanding the plaintiff did not know of it. There was no inconsistency in the plaintiff's receipt of the amount due for freight and demurrage, and authority still to hold or assert any other and distinct possessory right. The plaintiff's possession as bailee or as agent was sufficient to support an action of trover against one whose taking was wrongful.

A verdict in the action for conversion was justified if, as could

have been found, the defendant knew that he was not entitled to the possession, that the plaintiff could not deliver the merchandise to him without a breach of its obligation to the light company, that he took possession of it knowing that the delivery to him was unauthorized, and that it would not have been made except for an innocent mistake of fact on the part of the plaintiff. In these circumstances the defendant's possession of the goods was in reality unauthorized and wrongful, and no demand was necessary before bringing the action or before the disposal of the property by the defendant. *Kingman* v. *Pierce*, 17 Mass. 247. *Allen* v. *Williams*, 12 Pick. 297. *Stanley* v. *Gaylord*, 1 Cush. 536. *Chapman* v. *Cole*, 12 Gray, 141. *First National Bank of Cairo* v. *Crocker*, 111 Mass. 163. *Spooner* v. *Manchester*, 133 Mass. 270. *Cheshire Railroad* v. *Foster*, 51 N. H. 490. Even if the defendant believed that his receipt of the goods was justified because of the plaintiff's surrender of its actual possession, that belief was no defence. *Stanley* v. *Gaylord, supra. Gilmore* v. *Newton*, 9 Allen, 171. *Hills* v. *Snell*, 104 Mass. 173. *Cheshire Railroad* v. *Foster, supra.*

Having the right to immediate possession, the plaintiff can maintain an action of trover for the value of the goods although it was not the general owner of the property. *Aldrich* v. *Hodges*, 164 Mass. 570. *Bacon* v. *George*, 206 Mass. 566, 570. *Downey* v. *Bay State Street Railway*, 225 Mass. 281. *Beacon Motor Car Co.* v. *Shadman*, 226 Mass. 570. The exceptions raise no question as to the measure of damages.

In the action of contract, the defendant made six requests for rulings. Those numbered one and three were waived. The sixth is that upon "all the evidence the jury must find a verdict for the defendant." The only argument based on this exception is that the ruling should have been given because the plaintiff failed to elect as to the remedy pursued. This question already has been considered and decided adversely to the defendant. For the reasons hereinbefore given, it is clear that the defendant was not entitled to such a ruling upon any question involving the sufficiency of all the evidence in the action upon contract. The bill of exceptions does not purport to contain all the material evidence, and for that reason no error is shown in any event. *Sexton* v. *Boston Elevated Railway*, 214 Mass. 432, 435. *Altavilla* v. *Old*

*Colony Street Railway,* 222 Mass. 322.   Requests numbered four
and five contain a general statement of the law as to the right
to recoup, and claims of that right by reason of the liability of
the defendant to a third person for breach of contract because
of delayed delivery of the goods and for expenses incurred in dis-
mantling the merchandise.   So far as appears, there was no
evidence admitted bearing upon recoupment which entitled the
defendant to go to the jury on that issue, and the rulings relating
thereto were immaterial.   Although the defendant testified that
the lamps were broken when received, this alone, in the circum-
stances disclosed, did not require an abstract instruction as to
the right to recoup.   The bill of exceptions does not set forth all
the material evidence.   It did not appear what the nature of the
breakage was or whether it was of such a character that it
diminished the value of the lamps for the purpose for which
they were adapted to be used.   *Posell* v. *Herscovitz,* 237 Mass.
513.   *Lindsay* v. *Leighton,* 150 Mass. 285.   *Burke* v. *Hodge,*
211 Mass. 156.   The second request relating to loss sustained by
reason of the liability of the defendant for breach of a contract
with a third party is considered in connection with the defendant's
exception to the exclusion of evidence of such contract.

The exceptions taken to the judge's charge, not having been
argued, are treated as waived.   The remaining exceptions relate
to the admission and exclusion of evidence.

The defendant offered in evidence telegrams sent by him to
the light company after he had received the lamps and prior to
the institution of these suits, wherein he advised that company
of a claim for damages by a third person against him for failure
to perform a contract of resale made subsequently to his con-
tract with the light company.  He also offered to show that he
settled a suit brought against him on such contract.

The rule of damages for breach of contract ordinarily is the
difference in value in the property contracted to be sold in the
condition in which it was required to be under the terms of the
contract and its actual value.   There is nothing in this case to
warrant the application of a different rule.   Damages accruing
under a contract of resale as such cannot be charged against the
plaintiff.   They did not grow out of the contract itself nor were
they such as must have been in contemplation of the parties.

*Fox* v. *Harding*, 7 Cush. 516. *Curtis* v. *Boston Ice Co.* 237 Mass. 343. As the evidence was properly excluded the request for instructions relating to the same subject was rightly refused.

The defendant testified that he sold the material in the lamps. He was then asked in his own behalf, "What did you have to do before you sold the material, or what did you do?" No offer of proof was made, and it does not appear that the subject referred to in the question was relevant to any issue in either suit. The question was excluded subject to his exception. Error must be shown in order to sustain an exception, and none here appears. *Posell* v. *Herscovitz, supra.*

The judge admitted the testimony of one Feinberg that he had been in the business of selling new and second hand metals for twenty years; that he dealt in second hand arc lamps of the kind sold by the light company to the defendant, that they were well known lamps of standard form, and that he was familiar with their construction and value. There was no evidence that he knew the date when these particular lamps were made, or that he had ever seen them. He was permitted to testify, subject to the defendant's exception, as to their metal contents, that the copper and brass of which they largely consisted were scarce between the date of the contract and the time of the actual receipt of the property by the defendant, and that the price of metals during that time had an upward tendency. The witness further testified as to the fair market value of the lamps as junk. It is not contended that the facts involved in the question were not competent. The argument in support of this exception is that the witness had not seen the particular lamps and did not know when they were made. It does appear, however, from the bill of exceptions, which does not purport to contain all the evidence, that the lamps described in the evidence were, or might have been found to be, of the kind sold by the light company to the defendant and that they were of standard form. In these circumstances in the discretion of the judge, the witness was properly permitted to give an opinion as to the amount of copper and brass contained therein, and as to the price thereof. In his testimony, the witness assumed that the component parts of the lamps were as stated by the defendant. There was no error in the admission of the testimony.

Inasmuch as the exceptions disclose no error, they must be overruled.

*So ordered.*