BONDI BROTHERS *v.* HOLBROOK GROCERY COMPANY.

January Term, 1922.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 6, 1923.

*Trial—Foreign Law—Trover—Procedure Governed by Law of Forum—Sales—Exceptions Inadequately Briefed.*

1.  A foreign law is a question of fact and must be proved as such, but when it appears that the law sought to be proved is contained in statutes and judicial decisions of the foreign country and that there is no conflict therein and no unascertained fact necessary for their construction, such construction is for the court.

2.  In an action of tort for conversion, *held* that, under the Canadian law applicable to the case, the plaintiffs' title was established,

3.  Procedure is governed by the law of the forum.

4.  Where goods were sold by one to whom they had been consigned on draft with bill of lading attached, the consignee had such an interest therein that by payment of the unpaid balance he would have become the owner, and such interest was subject of sale.

5.  Exceptions inadequately briefed will not be considered.

ACTION OF TORT for the conversion of certain personal property. Plea, the general issue. Trial in vacation after the December Term, 1920, Orange County, *Wilson*, J., presiding. Judgment for the plaintiffs. The defendant excepted. The opinion states the case. *Affirmed.*

*Warren R. Austin* and *Philip H. Faulkner* (of Keene, N. H.) for the defendant.

*March M. Wilson* for the plaintiffs.

MILES, J.  This is an action of tort for the conversion of a carload of potatoes. The case was tried by court, facts were found, and judgment thereon was rendered for the plaintiffs.

The court, in substance, has found that about the middle of January, 1917, E. H. Grice of Richford, Vermont, bought of the New Brunswick Potato Exchange, Limited, four carloads of potatoes, one of which is the carload in question, for which a part payment of one hundred dollars was made on each carload. On January 29, 1917, Grice telegraphed the defendant, to whom he had previously sold potatoes, offering to sell it those potatoes. To this telegram, on the next day, the defendant replied by wire, declining to purchase the potatoes. The car in question with the three other carloads was shipped to Keene, New Hampshire, from St. Luce, Quebec, upon which a bill of lading was issued with a draft attached for the balance due on the car in question, and a bill of lading with draft attached was issued in like manner upon each of the other carloads. The drafts were drawn upon Grice, and, with the bill of lading duly indorsed, came into the possession of the Royal Bank of Canada. A direction to notify the defendant was contained in each bill of lading.

Upon learning that the defendant would not purchase the potatoes, Grice endeavored to change the shipment orders, but failed to accomplish that result. Accompanied by Roy E. Perry, who was interested in the potatoes, Grice went to Springfield, Massachusetts, and there on February 5, 1917, sold the four carloads of potatoes to the plaintiffs. After that Grice and Perry went on to Waterbury, Connecticut, where they sold other potatoes, after which they returned to Springfield, Massachusetts, where they learned that Grice had failed to divert the shipment of potatoes from their original destination, and that they had been set off upon the defendant's siding at Keene, New Hampshire. On February 10, 1917, Grice, Perry, and Bondi went to Keene, New Hampshire. A Mr. Simpson, manager of the produce department of the defendant, met them there, and together they examined the potatoes. Simpson then informed them that the defendant had attached the potatoes in a suit against the New Brunswick Potato Exchange, Limited; but the officer's return shows that the attachment was not made until February 12, 1917, and the court has found in accordance with the officer's return.

The bill with the draft attached was sent on to the bank in Richford, Vermont, for collection. Grice being out of the State at the time, the draft was not promptly paid, and it was some

time later returned with the bill of lading to the Royal Bank of Canada. On February 12, 1917, Grice returned to Richford accompanied by Bondi, and learning that the draft and bill of lading had been returned to the Royal Bank of Canada, both went on to Montreal, Bondi going on that night, and Grice following the next morning. On February 14, 1917, by an arrangement entered into by Grice, Bondi, the New Brunswick Potato Exchange, and the Royal Bank of Canada, the four drafts on the potatoes were exchanged for a single draft upon Bondi Brothers, payable to the Royal Bank of Canada. The payment of this draft being guaranteed by the Commercial Trust Company of Springfield, Massachusetts, the Royal Bank of Canada indorsed over and delivered the bill of lading to the plaintiffs. The amount of the new draft was the same as the total of the four drafts. An item of interest of $3.70 was paid by Grice to the New Brunswick Potato Exchange and by the exchange to the Royal Bank of Canada. The books of the bank, upon which the four drafts had been previously credited to the New Brunswick Potato Exchange, were balanced, so far as this transaction was concerned by a charge of similar sums, a charge and credit of the interest item, and a new credit for the new draft. This exchange of drafts, the court has found was apparently made as a matter of convenience, and it seems that these entries were made after the attachment and as a mere matter of bookkeeping, and that no rights under the bill of lading were changed or intended to be changed by the transaction. From Montreal Bondi went to Keene, New Hampshire, and on February 15, 1917, demanded of the defendant the potatoes in question. Three carloads were delivered to the plaintiffs upon this demand; but the defendant refused to deliver to the plaintiffs the carload in question. This carload the defendant caused to be sold as perishable property, under a New Hampshire statute, and no question is made but that that was regular and according to the statute, if the defendant had the right to attach the potatoes. On trial it was stipulated by the parties, that on February 2, 1917, the bill of lading was in the possession of the Royal Bank of Canada and continued therein until February 14, 1917, when the bank assigned and indorsed the same to the plaintiffs.

Eighteen exceptions were taken and reserved by the defendant, twelve of which were to findings of fact by the court, five

were to the refusal of the court to find as requested, and one was to the judgment rendered by the court. The grounds of the exceptions to the judgment, as stated in the bill of exceptions, are that the plaintiffs "were not entitled to possession at the time of the alleged conversion, and because neither the plaintiffs nor their predecessors in title intervened, the sale being a judicial sale, and because the New Brunswick Potato Exchange became the owner of the potatoes for an instant at least while they were under attachment and before the bill of lading was assigned and delivered to Bondi Brothers, and because Bondi Brothers and their predecessors entitled had notice of the attachment and possession by the sheriff at the time of the sale made by the New Brunswick Potato Exchange to Bondi Brothers, and because the real parties in interest, Grice and Perry, have been paid some money by Bondi Brothers in part settlement of this alleged conversion, and further because the real parties in interest were not joined in this suit as parties plaintiff." Several exceptions were taken during the trial to the admission and exclusion of evidence; but only one of these exceptions is briefed, and that was an exception to the admission of evidence of the sale of the potatoes by Grice to the plaintiffs.

[1] The first question raised by the defendant to the judgment below is, that the plaintiffs have not shown sufficient title to the potatoes to enable them to maintain this action. The principal transactions upon which the plaintiffs base their action, occurred in Canada, hence the legal effect of those transactions is to be determined by the law of that country. This is conceded by both parties. As has been repeatedly held in this State, a foreign law is a question of fact and must be proved as such; but from this it does not follow that the court is not to construe foreign statutes and judicial decisions when the witness produced to prove the foreign law testifies, that the law sought to be proved is contained in such judicial decisions or statutes of the foreign country, and when there is no conflict in such decisions or statutes, and when there is no unascertained facts necessary for their construction. The construction is for the court in such cases, and this is in no sense in conflict with the rule that a foreign law is a question of fact and is to be proved as such. In such cases the fact proved is, that the law of the foreign country is contained in certain statutes or judicial decisions or both,

and the construction is for the court, the same as in the case of a written instrument that is in issue. The existence of the instrument is a fact, but its construction is for the court. This is not a novel holding, but is in line with the recent holdings of this Court and courts in other jurisdictions.

In *Bradley* v. *Benton,* 85 Vt. 412, 417, 82 Atl. 669, it is said that the tendency of the judicial decisions introduced in that case was a question for the court, and not at all for the jury, there being no conflict among them, and no unascertained facts necessary to their construction. In *Alexander* v. *Pennsylvania Company,* 48 Ohio State 623, 30 N. E. 69, one of the cases cited in the Bradley case, it is said that to submit the examination or construction of judicial decisions to a jury would be little better than the cast of a die. In *Tarbell* v. *Grand Trunk Ry. Co.,* 96 Vt. 170, the rule is so fully stated that further discussion seems unnecessary.

[2]    The only witness testifying to the law of Canada was Edson Grenfell Place, an attorney from Canada. His testimony covered much that is unimportant in determining the substantial questions affected by the Canadian law, especially is that true respecting his testimony relating to the procedure in the Canadian court. He testified that the law of Canada respecting bills of lading, their indorsement and transfer, is contained in chapter 118 of the Revised Statutes of Canada, and in Article 1740 to 1748, inclusive, of the Civil Code of Canada, and in the case of *Gosselin* v. *Ontario Bank,* 36 Supreme Court of Canada Reports, 406, and in the Statutes Dominion of Canada, 3 and 4, Geo. V. ch. 9, § 86. The court found in accordance therewith. Therefore, what the law of Canada material to the issues in this case is, depends upon the construction of these authorities.

Section 2 of Chapter 118 of the Revised Statutes of Canada, 1906, is the section here material, and such of that section as is material is as follows:  ''Every * * * indorsee of a bill of lading to whom the property in the goods therein mentioned passes upon or by reason of such * * * * * indorsement shall have and be vested with all the rights of action and be subject to all such liabilities in respect of such goods as if the contract contained in the bill of lading had been made with himself.''  By section 1745 of the Civil Code of Lower Canada, bills of lading authorizing its possessor to transfer or receive goods thereby repre-

sented, are deemed documents of title. In *Gosselin* v. *Ontario Bank*, the court held that a contract of sale was perfect and binding upon the parties to it by their mere consent, although the thing sold was not delivered, subject, however, to the condition that the property and possession were not to pass until the price was paid; that a bill of lading acquired by a bank, "shall vest in the bank, from the day of the acquisition thereof, all the right and title of the previous holder or owner thereof." Section 86 of the Bank Act, referred to by Place and identified by him as the law relating to banks and their rights to hold and in holding bills indorsed to them, provides: "The bank may acquire and hold any warehouse receipt or bill of lading as collateral security for the payment of any debt incurred in its favor, or any security for any liability incurred by it for any person, in the course of its banking business." It is further provided in that section of the Bank Act as follows: "Any warehouse receipt or bill of lading so acquired shall vest in the bank, from the date of the acquisition thereof, all the right and title to such warehouse receipt or bill of lading and to the goods covered thereby of the previous holder or owner thereof."

The statutes and decision, construed together, clearly show that Grice became vested with an interest in the potatoes upon his purchase of them from the New Brunswick Potato Exchange, Limited, with the right to their possession upon payment of the unpaid balance, leaving in the exchange the right to their possession until such payment was made. When the bill of lading was indorsed to the Royal Bank of Canada, the Potato Exchange was left with no interest, right, or title in those potatoes, and the title to them then rested in Grice and the Royal Bank. When Grice sold them to the plaintiffs, the title was then in the plaintiffs and the bank, and the indorsement of the bill of lading to the plaintiffs by the bank, nothing further appearing, the entire right and title to the potatoes passed to the plaintiffs with the right of immediate possession thereof.

The plaintiffs' title to the potatoes was thus established, and the conceded fact that the defendant attached them under a claim of right, made out a *prima facie* case for the plaintiffs.

The defendant attempts to meet this case by showing that, though the Potato Exchange became divested of all right and title to the potatoes when the bill of lading was indorsed to the

Royal Bank of Canada, yet it became reinvested with that title when the bill of lading was returned from the bank at Richford, Vermont, to the Royal Bank of Canada and the draft attached was charged to the Potato Exchange by that bank. But there is no finding supporting this contention of the defendant that the draft was charged to the Exchange. As already stated, the entry was made as a matter of bookkeeping and not with the intention of affecting the rights of any one. Its defense in this regard must fail.

The defendant's contention that the plaintiffs were without sufficient title to maintain the action, is based upon the finding of the court as follows: "If Bondi Brothers had notice at the time of the transfer to them of the bill of lading that the potatoes represented by it were no longer actually in the possession of the carrier, Bondi Brothers would not then be entitled to treat the bill of lading as an absolute document of title." This finding, in connection with the defendant's claim that it had the right to attach the potatoes because the Potato Exchange had an attachable interest in them, in the light of our construction of the Canadian law, means no more than that the transfer of the bill of lading to the plaintiffs was subject to such legal rights as the defendant then had under its attachment. The actual possession of the potatoes was only notice to the plaintiffs of the defendant's claim of right to attach the potatoes; and, while the plaintiffs took the assignment of the bill of lading with notice that the defendant had attached the potatoes covered by the bill, such notice could affect the plaintiff, only in case the New Brunswick Potato Exchange, Limited, had an attachable interest in them at the time of the attachment, and this the defendant had failed to show.

[3]    The third and fourth points made in the defendant's brief relate to the procedure in the Canadian courts in cases like the one in hand. The law is too well settled in this State, as well as elsewhere, that the procedure is governed by the law of the forum, to require citation of authorities or comment.

[4]    The fifth point made in the defendant's brief was to the admission of oral proof of the sale of the potatoes by Grice to the plaintiffs. The ground of the exception was that Grice was not the owner of the potatoes at the time of the sale and that the evidence was immaterial and irrelevant. We have seen,

that by the law of Canada, Grice had an interest of such a character in the potatoes that by payment of the unpaid balance he would become the owner of the potatoes. This interest was subject of sale. *Fletcher* v. *Howard,* 2 Aik. 115; *Griswold* v. *Scott,* 66 Vt. 550, 29 Atl. 1013; *Patton* v. *Gardiner Brothers,* 72 Vt. 47, 47 Atl. 110. The defendant cites to the contrary *State* v. *O'Neil,* 58 Vt. 140, 2 Atl. 586, 56 A. R. 557, but that case is not in conflict with the cases above cited and is distinguished from them, in *Griswold* v. *Scott, supra.* No error is found in the judgment below on the facts found.

[5] The remaining exceptions relate to the findings of fact and refusal to find as requested. Exceptions 13 to 17, inclusive, are inadequately briefed, and so are not considered. Upon examination of the transcript and the depositions, we find substantial evidence supporting the essential facts found to which exceptions 1, 3, 5, 7, and 10 are taken. Exceptions 6 and 9 are disposed of by what we have already said respecting the charge of the draft by the Royal Bank of Canada, to the Potato Exchange, when the same was returned to the bank from Richford, and respecting the defendant's claim that the charge amounted to payment of the draft by the Potato Exchange. Requests 2, 4, and 8 were substantially complied with, so far as the same is supported by the evidence and are material to any issue in the case.

*We find no error in the judgment below and the same is affirmed.*